# EXHIBIT A

**From:** "jsweet@boothsweet.com" <jsweet@boothsweet.com>
**Subject:** **Malibu Media, LLC v. 65.189.10.120, 1:14-cv-00493**
**Date:** July 31, 2014 2:47:58 PM EDT
**To:** yousef@ymfincorporated.com

▶ 1 Attachment, 13.2 KB



Yousef

My client in this matter is interested in hearing what the settlement terms are. Is there a good time to talk today?

Regards,
Jason

Jason Sweet
Booth Sweet LLP
32R Essex Street
Cambridge, MA 02139
T: (617) 250-8619
F: (617) 250-8883
www.boothsweet.com
www.facebook.com/BoothSweet

This e-mail is from the law firm Booth Sweet LLP, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments.



BOOTH SWEET LLP

**From:** Yousef Faroniya <yousef@ymfincorporated.com>
**Subject:** **Malibu Media, LLC v IP 65.189.10.120 case: 1:14-cv-00493-TSB SOH54-1**
**Date:** July 31, 2014 3:53:52 PM EDT
**To:** jsweet@boothsweet.com

Jason:

I have notated your representation on the above case.  At this time, my client is seeking the minimum statutory amount per work infringed.  The Copyright Act states that a copyright owner is entitled to recover "an award of statutory damages for all infringements involved in the action, with respect to any one work…a sum of not less than $750[.]"  See 17 U.S.C.A. § 504.  As you can see in Plaintiff's Complaint, your client infringed a total of 30 separate works.  Plaintiff is willing to settle for $22,500 (750*30).  My client believes this is a fair offer given the $2250 per work decisional authority in the Malibu Media Bellwether case.  Malibu Media, LLC v. John Does 1, 6, 13, 14, 950 F. Supp. 2d 779 (E.D. Pa. 2013).  Please consult with your client and if accepted, I can send over a release of all claims for you to review as well as notify the ISP to withhold your client's information once we have a signed agreement.


Thank You,
--
**Yousef M. Faroniya**
CEO and Attorney at Law
YMF Inc.
84 S. 4th St.
Columbus, Ohio 43215
(614) 961-6606
yousef@YMFincorporated.com
YMFincorporated.com

CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.

From: "jsweet@boothsweet.com" <jsweet@boothsweet.com>
Subject: **Re: Malibu Media, LLC v IP 65.189.10.120 case: 1:14-cv-00493-TSB SOH54-1**
Date: August 1, 2014 2:40:21 PM EDT
To: Yousef Faroniya <yousef@ymfincorporated.com>



▶   1 Attachment, 13.2 KB

Yousef:

The Complaint alleges my client infringed a total of 30 separate works. However, the Complaint is not clear how or what my client is alleged to have infringed. More so, Plaintiff contradicts its allegations in the Complaint.

My client is the subscriber to whom the IP address in question was assigned on the date and time of the alleged infringement cited in the subpoena. The IP address in question was dynamic, a fact Time Warner notes in its correspondence to my client.

As we both know, the subscriber is not necessarily the infringer. Yet, to bolster your claim that my client is the infringer you reference "Additional Evidence" in paragraphs 25-28 of the Complaint. However, any BitTorrent activity listed for works not owned by Malibu Media is inadmissible under FRE 404. The reason for this is because *"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."* In other words, proving that my client is a "serial downloader" is not admissible to prove that on a particular date and time, my client downloaded Malibu's copyrighted titles. Further, introducing evidence of "other" downloads is not relevant and is actually prejudicial and thus not admissible for those reasons as well. Therefore, I can only assume the intended and sole purpose of mentioning the "Additional Evidence" is to increase the pressure to settle.

Even if we assume my client is the infringer, Plaintiff's claims are overreaching.

First, with regard to the 30 separate works my client is alleged to have infringed, the most recent hit dates provided in the Complaint for 15 of the films occurred more than six months prior to the 4/6/2014 on the subpoena. I mention this because Time Warner only maintains records for six months, a fact Time Warner notes on its website. Therefore, the only evidence of any alleged downloading is the Plaintiff's alone. More so, the subpoena is narrowly defined to the identification of the subscriber of a dynamic IP address on 4/6/2014 at 18:21 UTC. Of the films, only four were allegedly infringed that day and of those four only **one** was allegedly infringed at that time.

Second, the Complaint fails to state a claim. What Plaintiff alleges to have been copied is not the movies on Exhibit B, nor is it the "correlating" hash files listed on Exhibit A. Instead, Plaintiff alleges,

> "19. IPP International UG downloaded from Defendant one or more bits of each of the digital movie files identified by the file hashes on Exhibit A. (Again at ph. 22)."

Alleging that "one or more bits" were copied by the Plaintiff's agent does not equate an alleged infringement by my client of the work Plaintiff claims to own. Here, the only thing alleged to have been infringed are "one or more bits" of a "hash file" that "correlate to" movie files.

> "[C]opying an encrypted, unusable piece of a video file via the Bittorrent protocol may not be copyright infringement. [What is being taken is] an encrypted, unusable chunk of zeroes and ones. And as part of its prima facie copyright claim, Plaintiff must show that Defendants copied the copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). If a download was not completed, Plaintiff's lawsuit may be deemed frivolous."

*Ingenuity 13, LLC v. John Doe*, 2:12-cv-8333-ODW, ECF No. 48 (C.D. Cal. Feb. 7, 2013).

Plaintiff has filed 2,500+ lawsuits, ostensibly some these suits include the same film(s) at issue here. Assuming, 1) Plaintiff does not want to provide an accounting of what's been collected to date in compliance with the single satisfaction rule; and 2) the above factors …

My client is willing to pay $449.95—the cost of filing the Complaint and a one month subscription to Plaintiff's website.

Regards,
Jason

As an aside, you may want to change paragraph 12 of the Complaint, as it contains a knowing misstatement regarding DMCA notices and the necessity of the John Doe subpoenas.

1. … The methodology of BitTorrent allows users to interact directly with each other, thus avoiding the need for intermediary host websites which are subject to DMCA take down notices and potential regulatory enforcement actions.

Truth is, torrent files are typically published on websites or elsewhere, and Malibu routinely issues DMCA notices to these sites. Often on the same day it publishes the works it files suit over. A simple Google search will confirm this.

On Jul 31, 2014, at 3:53 PM, Yousef Faroniya wrote:

Jason:

I have notated your representation on the above case. At this time, my client is seeking the minimum statutory amount per work infringed. The Copyright Act states that a copyright owner is entitled to recover "an award of statutory damages for all infringements involved in the action, with respect to any one work…a sum of not less than $750[.]" See 17 U.S.C.A. § 504. As you can see in Plaintiff's Complaint, your client infringed a total of 30 separate works. Plaintiff is willing to settle for $22,500 (750*30). My client believes this is a fair offer given the $2250 per work decisional authority in the Malibu Media Bellwether case. Malibu Media, LLC v. John Does 1, 6, 13, 14, 950 F. Supp. 2d 779 (E.D. Pa. 2013). Please consult with your client and if accepted, I can send over a release of all claims for you to review as well as notify the ISP to withhold your client's information once we have a signed agreement.

Thank You,
--
**Yousef M. Faroniya**
CEO and Attorney at Law
YMF Inc.
84 S. 4th St.
Columbus, Ohio 43215
(614) 961-6606
yousef@YMFincorporated.com
YMFincorporated.com

CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.

Jason Sweet
Booth Sweet LLP
32R Essex Street
Cambridge, MA 02139

T: (617) 250-8619
F: (617) 250-8883
www.boothsweet.com
www.facebook.com/BoothSweet

This e-mail is from the law firm Booth Sweet LLP, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments.

BOOTH SWEET LLP

From: Yousef Faroniya <yousef@ymfincorporated.com>
Subject: **Malibu Media, LLC v IP 65.189.10.120 case: 1:14-cv-00493-TSB SOH54-1**
Date: August 4, 2014 11:15:11 AM EDT
To: jsweet@boothsweet.com

Dear Jason,


Thank you for your recent correspondence regarding this case.  I'd like to take this opportunity to address your various assertions, and to share with you Malibu Media's current litigation procedures and policies.  It behooves everyone involved that all parties possess the requisite information in order to make the best decisions relating to what truly is in the best interest of our respective clients.

There have been cases where Malibu Media would have been willing to dismiss the action should Defendant's counsel have relayed a key piece of information early on.  Conversely, there have been many cases where Defendant's counsel would have elected to turn back the clock once the eventual realities became clear.  That being said, addressing your points:

=======================

"As we both know, the subscriber is not necessarily the infringer."

----

Yes, this is correct.  However, at this stage of litigation, the subscriber is the most likely candidate to be the infringer.  Further, it is unquestionably "plausible" that the subscriber is the infringer.  That being said, there are scenarios where the infringer is an individual other than the subscriber.  If this is the situation within this case, then we encourage you to tell us who is responsible for these infringements. Malibu Media is only interested in pursuing the responsible party.  If the infringer cannot be identified after our full investigation, then Malibu will dismiss the case.

Prior to amending any complaint to name an individual, Malibu Media conducts an extensive investigation.  Within its analysis, Malibu Media uses a "reasonable doubt" standard to assess whether it will amend and name a specific person. Also, for your future information, Malibu will never oppose a motion for the Defendant to proceed anonymously.

=============================

"The Complaint alleges my client infringed a total of 30 separate works. However, the Complaint is not clear how or what my client is alleged to have infringed."

----

We disagree.  The Complaint is quite clear.  The infringer using the IP address referenced in the Complaint distributed one or more "bits" of each of the 30 movies listed on Exhibit A and Exhibit B to our investigative servers.  One or more bits of each digital movie file (as identified by its Hash) were uploaded by the infringer, and each of these transactions was captured and stored within forensically time-stamped PCAP's.  As an aside, the infringer in this case distributed four additional movies after this Complaint was filed bringing the total to 34.  However, as a courtesy, we quote just the infringements documented in the Complaint as it relates to any possible early settlement discussions.

The language in this Complaint has been attacked by dozens of defendants and Malibu Media has never lost a motion to dismiss.  The case law on this is extensive.  If you feel that you have an angle that could result in dismissal prior to ISP discovery on all the Malibu Media cases, then nothing I can say will dissuade you from eventually doing so.  It is my strong belief that you will fail in this pursuit, and the costs incurred by Malibu in defeating your motions will eventually be borne by your clients.

==============================

"The IP address in question was dynamic, a fact Time Warner notes in its correspondence to my client .....  with regard to the 30 separate works my client is alleged to have infringed, the most recent hit dates provided in the Complaint for 15 of the films occurred more than six months prior to the 4/6/2014 on the subpoena. I mention this because Time Warner only maintains records for six months, a fact Time Warner notes on its website. Therefore, the only evidence of any alleged downloading is

the Plaintiff's alone. More so, the subpoena is narrowly defined to the identification of the subscriber of a dynamic IP address on 4/6/2014 at 18:21 UTC. Of the films, only four were allegedly infringed that day and of those four only one was allegedly infringed at that time."

-----

The date range embedded within the Exhibit A on this complaint starts on 7/21/2013 (UTC) and ends on 4/6/2014 (UTC). The infringements alleged in this Complaint happened within that time frame.

There are two possible theories:

Theory A: The subscriber as identified by TWC as the owner on 4/6/2014 only owned the IP during that one, or just a few, of the alleged infringements. The other infringements were effectuated at a time when the applicable IP was assigned to another TWC customer.

Theory B: The subscriber owned the IP during all the relevant dates of infringements.

This then devolves to a question of fact. The entirety of the infringements alleged within this case were done using a uTorrent BitTorrent Client. Yes, 45% of all users on BT currently use uTorrent, so that alone is not dispositive. However, the infringer during the entirety of the stated time frame of infringements also switched back and forth between the Xart content and content from a more obscure site named "Haze Her". This pattern was consistent during the duration of these infringements. There are also at least 4 other correlating trends, but I won't belabor this point.

So, Theory A is that by bizarre coincidence, that IP address was dynamic and was reassigned serendipitously to another customer who was also using uTorrent on the BitTorrent file distribution network going back and forth between Xart and Haze Her video files as well as sequentially downloading episodes of a popular television show para passu between one and the other.

Theory B is that there is no fantastical explanation. The same person did all the infringements.

With a preponderance standard, we feel good with our position within this arena. At trial we will demonstrate the statistical unlikelihood that another user was assigned the same IP address and chose to download the same content as your client within a time frame directly before your client was assigned the IP address. We also disagree about Time Warner solely maintaining IP assignment data for six months. A special database was created by TWC and other CAS participants to track and correlate dynamic IP addresses to the applicable subscriber for any receiving a notice from the Six Strikes program. If the subscriber in this case received a notification from CAS, then there might be an additional dynamic IP address associated with this subscriber that would actually serve to increase the number infringements attributed to him/her. You might want to seriously consider this avenue of attack in that it could serve to dig your client into a deeper hole.

==========================

"....to bolster your claim that my client is the infringer you reference "Additional Evidence" in paragraphs 25-28 of the Complaint. However, any BitTorrent activity listed for works not owned by Malibu Media is inadmissible under FRE 404. The reason for this is because "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." In other words, proving that my client is a "serial downloader" is not admissible to prove that on a particular date and time, my client downloaded Malibu's copyrighted titles. Further, introducing evidence of "other" downloads is not relevant and is actually prejudicial and thus not admissible for those reasons as well. Therefore, I can only assume the intended and sole purpose of mentioning the "Additional Evidence" is to increase the pressure to settle."

--------

It appears you misunderstand the purpose of the Additional Evidence. It has nothing to do with the person's "character" or any "character trait". We agree that it would be inane to assert that the Defendant is a "serial downloader" of other content, ergo they must be the Malibu infringer. That is not our intent.

The Additional Evidence allows us to focus our preliminary investigation on the most likely party responsible for the claimed infringements. For example, in the case at hand the initial investigation has indicated that the likely infringer is a male under the age of 35. The infringer also engages in amateur (at a higher end level) photography, and probabilities are that he works

(or is studying to work within) the health care space. Again, it is early on within this investigation and we are unable to complete it until we receive name discovery from the TWC.

Should we identify that the subscriber in this case, or another authorized user, conforms with our final analysis, then we will amend the Complaint and ask you if you will accept service on their behalf. After you agree, we will conduct our 26F conference and then proceed into discovery. I have no doubt you will clearly explain to your client not to attempt to spoil evidence, but unfortunately the odds are high that they will not listen to you.

Discovery will eventually quantify that the Defendant is indeed the infringer. This has been universal. Some highly sophisticated Defendants have engaged in elaborate attempts to spoil evidence -- all with the same eventual result. Further discovery in the case amply allows us to prove our case to our desired "reasonable doubt" standard, let alone the requisite "prepondance" standard. Within the context of the actual trial, elements of the Additional Evidence not relating to "character" or "character traits" certainly would be admissible. Indeed, numerous judges, including Judge Baylson in the Bellwether trial have found this evidence relevant and refused to strike it.

The Additional Evidence is the least worry for a guilty Defendant in one of these suits and should present no "pressure" to settle. The main, and really only, "pressue" within these Malibu Media cases relates to the exposure to Statutory Damages and fees. If you are unhappy with the fact that "pressure" does exists consequent to those realities, Congress is currently holding hearings as to whether changes should be made. Perhaps you should become a panelist in one of the future hearings in order to express your opinions relating to this facet of copyright law.

To be ultimately clear, if your client is not responsible for these infringements, then we strongly advise AGAINST them settling and they obviously have no legal, moral or any other reason to send Malibu Media one penny.

======================

"Second, the Complaint fails to state a claim. What Plaintiff alleges to have been copied is not the movies on Exhibit B, nor is it the "correlating" hash files listed on Exhibit A. Instead, Plaintiff alleges,....."19. IPP International UG downloaded from Defendant one or more bits of each of the digital movie files identified by the file hashes on Exhibit A. (Again at ph. 22)."....Alleging that "one or more bits" were copied by the Plaintiff's agent does not equate an alleged infringement by my client of the work Plaintiff claims to own. Here, the only thing alleged to have been infringed are "one or more bits" of a "hash file" that "correlate to" movie files......."[C]opying an encrypted, unusable piece of a video file via the Bittorrent protocol may not be copyright infringement. [What is being taken is] an encrypted, unusable chunk of zeroes and ones. And as part of its prima facie copyright claim, Plaintiff must show that Defendants copied the copyrighted work. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). If a download was not completed, Plaintiff's lawsuit may be deemed frivolous." .....Ingenuity 13, LLC v. John Doe, 2:12-cv-8333-ODW, ECF No. 48 (C.D. Cal. Feb. 7, 2013). .....Plaintiff has filed 2,500+ lawsuits, ostensibly some these suits include the same film(s) at issue here. Assuming, 1) Plaintiff does not want to provide an accounting of what's been collected to date in compliance with the single satisfaction rule;..."

-------

The main issue you refer to here has been litigated in front of many of judges. If you are lucky, you will find 4 of them within the entirety of the Federal Judiciary who agree with you. Having a Plaintiff like Ingenuity certainly makes Defense counsel work a tad easier. If you file a Motion to Dismiss based upon the theories you describe here, your chances of prevailing, statistically, are < 1%.

As to the accounting relating to the single satisfaction rule, there is nothing in the copyright statute that limits Malibu Media's ability to recover multiple statutory damages for a single work. Malibu is not alleging joint and several liability in these individual Defendant suits. Even so, accountings already exist and settlements in totality do not even approach "maximizing" the available statutory damage amounts for any given Work.

=================================================

"My client is willing to pay $449.95—the cost of filing the Complaint and a one month subscription to Plaintiff's website."

----

Based upon the information within our possession at this moment, your offer is unfortunately rejected. As indicated previously,

if your client is not responsible for these infringements, then they should not pay any settlement whatsoever. Even if your client is responsible for these infringements, there are some situations where we will dismiss the case without settlement.

Possibly, this client might qualify for an immediate dismissal, and all that is needed is for you to convey the applicable information.  Should your client (assuming they are the infringer) not qualify for dismissal per any of the above, then it still is very possible that they qualify for a greatly reduced settlement demand due to "hardship".

If you desire to see if your client qualifies, we simply need you to provide your client's name and street address, and we will investigate and get back to you expeditiously with an answer.  Of course, this information will be used solely to analyze whether "hardship" applies, and Malibu Media would be willing to execute an NDA to that effect.  Or, we can simply wait for TWC to respond to the subpoena, and if hardship is determined we will unilaterally reduce our demand as a matter of policy.

====================================

"As an aside, you may want to change paragraph 12 of the Complaint, as it contains a knowing misstatement regarding DMCA notices and the necessity of the John Doe subpoenas....1…. The methodology of BitTorrent allows users to interact directly with each other, thus avoiding the need for intermediary host websites which are subject to DMCA take down notices and potential regulatory enforcement actions.

Truth is, torrent files are typically published on websites or elsewhere, and Malibu routinely issues DMCA notices to these sites. Often on the same day it publishes the works it files suit over. A simple Google search will confirm this."

--------

Yes, you are correct that DMCA notices can be sent to "torrent sites" which provide either Magnet Links or alternatively store "torrent files".  However, DHT is becoming increasingly popular thus obviating the need for any torrent file or site:

http://en.wikipedia.org/wiki/BitTorrent#Decentralized_keyword_search

Should the entirety of all torrent sites be wiped off the face of the earth (and space considering the Pirate Bay's stated plans to launch their own satellite), BitTorrent users would instantly all switch to DHT and the infringement within BT would go on unabated.

Obviously, short of SOPA (which we both know will never happen), it is absolutely impossible to remove/delete/make disappear all of the sites hosting torrent files or magnet links.  Additionally, Malibu could send 1 gazillion DMCA notices to the Pirate Bay, and it will have zero effect.

http://www.webpronews.com/the-pirate-bay-responds-to-shrek-takedown-request-2012-05

Malibu Media sends a voluminous amount of DMCA notices to remove Google links, listings on torrent sites, listings on "one-click" sites, Twitter, as well as various and sundry other hosted websites.  Ironically, Malibu is often attacked for this by people who think the DMCA is "abusive" or the like and that removing all these links "hurts" or makes the Internet "feel bad".

Malibu sends these DMCA notices because each link that is removed increases the odds of a user clicking on a link that will lead to a legal subscription as opposed to an illicit download.  Additionally, each search result which goes to a post on DieTroll or a white paper on Malibu suits or an article on Ars Technica about some Malibu case or the other -- that also provides incentive to click the legal link as opposed to the one leading to a pirated copy.

The gist of your argument is that you think there is a viable way or "magic trick" to combat BitTorrent based piracy instead of suits filed against those actually distributing content on BitTorrent. Obviously, this trick does not exist, or else Hollywood would not have needlessly subjected themselves to this brutal "double-milker":

http://www.nytimes.com/2013/10/22/opinion/politicians-extortion-racket.html

In my opinion, attempting to imply that this couple from Malibu, CA is able to combat BitTorrent piracy of their copyrighted Works by doing anything OTHER than filing John Doe lawuits is what actually would be a "knowing misstatement".

========

Hopefully some of this information assists you in your decision on how best to proceed in the representation of this particular client. If you have any further questions, I would be happy to attempt to answer them.

At your convenience, please let me know how you desire to proceed in this case.


Thank You,

--
**Yousef M. Faroniya**
CEO and Attorney at Law
YMF Inc.
84 S. 4th St.
Columbus, Ohio 43215
(614) 961-6606
yousef@YMFincorporated.com
YMFincorporated.com

CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.



From: "jsweet@boothsweet.com" <jsweet@boothsweet.com>
Subject: **Re: Malibu Media, LLC v IP 65.189.10.120 case: 1:14-cv-00493-TSB SOH54-1**
Date: August 11, 2014 5:09:04 PM EDT
To: Yousef Faroniya <yousef@ymfincorporated.com>

▶   1 Attachment, 13.2 KB

As an initial matter, who am I speaking with? And why the subterfuge?

My phone calls to Yousef, who is listed as counsel, have not been answered. I have been informed by other attorneys that local counsel for Malibu in these matters have no power to enter into settlement negotiations. Pointedly, a voice mail I left for Yousef specifically asking whether he drafted the response I received from Malibu has gone unreturned.

_____

Any assertions made on behalf of my client are premised upon your pleadings. In my prior email I raised several points. In response I received a lengthy email, drafted by an unknown person, devoid of supporting citations yet ample with personal snipes, which not only failed to address those points raised but succeeded in further muddying the waters.

_____

Malibu Media may be only interested in pursuing the responsible party, but it is clear they have no idea who that may be.

Δ: "As we both know, the subscriber is not necessarily the infringer."
MM: "Yes, this is correct."

What follows this admission is baffling.

"However, at this stage of litigation, the subscriber is the most likely candidate to be the infringer.  Further, it is unquestionably "plausible" that the subscriber is the infringer.  That being said, there are scenarios where the infringer is an individual other than the subscriber."

In three short sentences Malibu goes from asserting 'the subscriber is the infringer', to 'the subscriber might be the infringer', to 'the subscriber isn't the infringer.'

These conflicting assertions are repeated throughout the response, i.e.

"If the infringer cannot be identified after our full investigation, then Malibu will dismiss the case."

"Discovery will eventually quantify that the Defendant is indeed the infringer. This has been universal."

"To be ultimately clear, if your client is not responsible for these infringements, then we strongly advise AGAINST them settling … "

_____

"The infringer using the IP address referenced in the Complaint distributed one or more "bits" of each of the 30 movies listed on Exhibit A and Exhibit B to our investigative servers."

Which is it? One *or* more "bits"? Only one hash is provided for each corresponding film. Are there others? More so, the hash provided is for the digital movie files, not the "bits" your investigator downloaded. To be clear, the Complaint does not claim the subscriber distributed Malibu's films, it claims the subscriber distributed otherwise non-infringing "bits".

_____

"We also disagree about Time Warner solely maintaining IP assignment data for six months.  A special database was created by TWC and other CAS participants to track and correlate dynamic IP addresses to the applicable subscriber for any receiving a notice from the Six Strikes program. *If* the subscriber in this case received a notification from CAS, then *there might be* an additional dynamic IP address associated with this subscriber that would actually serve to increase the number infringements attributed to him/her." (emphasis added)

My client never received any such notice. Knowing this, please let me know how the 15 films occurring more than six months prior to the 4/6/2014 date on the subpoena will be addressed. More importantly, please explain why these 15 films were

included in the Complaint if, as you acknowledge, service of a CAS notice may never have occurred and apparently was never confirmed.

_____

Malibu sets forth two possible theories of liability in its response:

Theory A:  The subscriber as identified by TWC as the owner on 4/6/2014 only owned the IP during that one, or just a few, of the alleged infringements. The other infringements were effectuated at a time when the applicable IP was assigned to another TWC customer.

Theory B:  The subscriber owned the IP during all the relevant dates of infringements.

I agree Theory A (concurrent assignment of the same IP address to two different TWC customers) is improbable.

However, allow me to posit three alternative theories, which are not only as plausible as Theory B, but are just as often true.

Theory C:  The defendant has (or had) an open WiFi access point at the time. The crime was committed by someone who used that connection.

Theory D:  The defendant has (or had) a secure WiFi access point with bad credentials at the time. The crime was committed by someone who guessed or obtained those credentials.

Theory E:  A friend or associate of the defendant performed the crime using the defendant's systems without the defendant's knowledge or permission.

Theories B-E all demonstrate the underlying problem, the true identity of any infringer is often unascertainable. Being a subscriber does not equate with being an infringer.

_____

With regard to the Additional Evidence: "It appears you misunderstand the purpose of the Additional Evidence. It has nothing to do with the person's "character" or any "character trait". We agree that it would be inane to assert that the Defendant is a "serial downloader" of other content, ergo they must be the Malibu infringer.  That is not our intent."

Yet, when illustrating theories of liability for my client, that is exactly how you use it.
"However, the infringer during the entirety of the stated time frame of infringements also switched back and forth between the Xart content and content from a more obscure site named "Haze Her". This pattern was consistent during the duration of these infringements. There are also at least 4 other correlating trends, but I won't belabor this point."

Forgive my trepidation, but you can see how my concern remains.

_____

"[I]n the case at hand the initial investigation has indicated that the likely infringer is a male under the age of 35. The infringer also engages in amateur (at a higher end level) photography, and probabilities are that he works (or is studying to work within) the health care space."

After speaking with my client, I can honestly say this is an inaccurate profile of them.

_____

The response begins by stating: "There have been cases where Malibu Media would have been willing to dismiss the action should Defendant's counsel have relayed a key piece of information early on."

At first, it was unclear what this "key piece" may be.

"If you feel that you have an angle that could result in dismissal *prior* to ISP discovery on all the Malibu Media cases."

*Prior*? The implication, here then, is that Malibu is interested in the subscriber's name only and once obtained doesn't care if a matter is dismissed. This reading is borne by Malibu's constant requests for the subscriber's name in the response:

"Again, it is early on within this investigation and we are unable to complete it until we receive name discovery from the TWC."

"[W]e simply need you to provide your client's name and street address, and we will investigate and get back to you expeditiously with an answer."
_____

The main issue you refer to here has been litigated in front of many of judges. If you are lucky, you will find 4 of them within the entirety of the Federal Judiciary who agree with you. Having a Plaintiff like Ingenuity certainly makes Defense counsel work a tad easier. If you file a Motion to Dismiss based upon the theories you describe here, your chances of prevailing, statistically, are < 1%.

"As to the accounting relating to the single satisfaction rule, there is nothing in the copyright statute that limits Malibu Media's ability to recover multiple statutory damages for a single work. Malibu is not alleging joint and several liability in these individual Defendant suits. Even so, accountings already exist and settlements in totality do not even approach "maximizing" the available statutory damage amounts for any given Work."

An infringement commences at the time when the first act of infringement in a series of on-going discrete infringements occur. *Whelan Assocs., Inc. v. Jaslow Dental Lab.*, 609 F. Supp. 1325, 1331 (E.D. Penn. 1985); *Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 323 (4th Cir. Md. 2007) (In using the word "commenced," 17 U.S.C.S. § 412(1) instructs a court to trace infringing conduct after registration back to the original infringement. In other words, "infringement commences for the purposes of 17 U.S.C.S. § 412 when the first act in a series of acts constituting continuing infringement occurs.)

> Each separate act of infringement is, of course, an "infringement" within the meaning of the statute, and in a literal sense perhaps such an act might be said to have "commenced" (and ended) on the day of its perpetration. … However, it would be peculiar if not inaccurate to use the word "commenced" to describe a single act. That verb generally presupposes as a subject some kind of activity that begins at one time and continues or reoccurs thereafter.

*Singh v. Famous Overseas, Inc.*, 680 F. Supp. 533, 535 (E.D.N.Y. 1988).

If Malibu knows why the same standard would not be applied here, please forward me the citations.

"Malibu is not alleging joint and several liability in these individual Defendant suits."

It doesn't have to for the above standard to apply. And it contradicts the "related matters" Malibu filed with the court.
_____

"It behooves everyone involved that all parties possess the requisite information in order to make the best decisions relating to what truly is in the best interest of our respective clients."

Agreed. My client would entertain providing his name and address (which is Malibu's only requesting) in exchange for the following:

1. All evidence of my client's alleged infringement;
2. All of the 'Additional Evidence' mentioned in the Complaint;
3. An accounting of settlements for those films listed in the Complaint;
4. An explanation of how technology is used and works; and
5. Proof of IPP's existence beyond the virtual office it maintains in Karlsrhue, Germany.


Jason Sweet
Booth Sweet LLP
32R Essex Street
Cambridge, MA 02139
T: (617) 250-8619
F: (617) 250-8883
www.boothsweet.com
www.facebook.com/BoothSweet

This e-mail is from the law firm Booth Sweet LLP, and may contain information that is confidential or privileged. If you are not the intended

recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments.

### BOOTH SWEET LLP

On Aug 4, 2014, at 11:15 AM, Yousef Faroniya wrote:

Dear Jason,

Thank you for your recent correspondence regarding this case.  I'd like to take this opportunity to address your various assertions, and to share with you Malibu Media's current litigation procedures and policies.  It behooves everyone involved that all parties possess the requisite information in order to make the best decisions relating to what truly is in the best interest of our respective clients.

There have been cases where Malibu Media would have been willing to dismiss the action should Defendant's counsel have relayed a key piece of information early on.  Conversely, there have been many cases where Defendant's counsel would have elected to turn back the clock once the eventual realities became clear.  That being said, addressing your points:

=======================

"As we both know, the subscriber is not necessarily the infringer."

----

Yes, this is correct.  However, at this stage of litigation, the subscriber is the most likely candidate to be the infringer.  Further, it is unquestionably "plausible" that the subscriber is the infringer.  That being said, there are scenarios where the infringer is an individual other than the subscriber.  If this is the situation within this case, then we encourage you to tell us who is responsible for these infringements. Malibu Media is only interested in pursuing the responsible party.  If the infringer cannot be identified after our full investigation, then Malibu will dismiss the case.

Prior to amending any complaint to name an individual, Malibu Media conducts an extensive investigation.  Within its analysis, Malibu Media uses a "reasonable doubt" standard to assess whether it will amend and name a specific person.  Also, for your future information, Malibu will never oppose a motion for the Defendant to proceed anonymously.

==============================

"The Complaint alleges my client infringed a total of 30 separate works. However, the Complaint is not clear how or what my client is alleged to have infringed."

----

We disagree.  The Complaint is quite clear.  The infringer using the IP address referenced in the Complaint distributed one or more "bits" of each of the 30 movies listed on Exhibit A and Exhibit B to our investigative servers.  One or more bits of each digital movie file (as identified by its Hash) were uploaded by the infringer, and each of these transactions was captured and stored within forensically time-stamped PCAP's.  As an aside, the infringer in this case distributed four additional movies after this Complaint was filed bringing the total to 34.  However, as a courtesy, we quote just the infringements documented in the Complaint as it relates to any possible early settlement discussions.

The language in this Complaint has been attacked by dozens of defendants and Malibu Media has never lost a motion to dismiss.  The case law on this is extensive.  If you feel that you have an angle that could result in dismissal prior to ISP discovery on all the Malibu Media cases, then nothing I can say will dissuade you from eventually doing so.  It is my strong belief that you will fail in this pursuit, and the costs incurred by Malibu in defeating your motions will eventually be borne by your clients.

=================================

"The IP address in question was dynamic, a fact Time Warner notes in its correspondence to my client ..... with regard to the 30 separate works my client is alleged to have infringed, the most recent hit dates provided in the Complaint for 15 of the films occurred more than six months prior to the 4/6/2014 on the subpoena. I mention this because Time Warner only maintains records for six months, a fact Time Warner notes on its website. Therefore, the only evidence of any alleged downloading is the Plaintiff's alone. More so, the subpoena is narrowly defined to the identification of the subscriber of a dynamic IP address on 4/6/2014 at 18:21 UTC. Of the films, only four were allegedly infringed that day and of those four only one was allegedly infringed at that time."

-----

The date range embedded within the Exhibit A on this complaint starts on 7/21/2013 (UTC) and ends on 4/6/2014 (UTC). The infringements alleged in this Complaint happened within that time frame.

There are two possible theories:

Theory A:  The subscriber as identified by TWC as the owner on 4/6/2014 only owned the IP during that one, or just a few, of the alleged infringements.  The other infringements were effectuated at a time when the applicable IP was assigned to another TWC customer.

Theory B:  The subscriber owned the IP during all the relevant dates of infringements.

This then devolves to a question of fact.  The entirety of the infringements alleged within this case were done using a uTorrent BitTorrent Client.  Yes, 45% of all users on BT currently use uTorrent, so that alone is not dispositive.  However, the infringer during the entirety of the stated time frame of infringements also switched back and forth between the Xart content and content from a more obscure site named "Haze Her".  This pattern was consistent during the duration of these infringements.  There are also at least 4 other correlating trends, but I won't belabor this point.

So, Theory A is that by bizarre coincidence, that IP address was dynamic and was reassigned serendipitously to another customer who was also using uTorrent on the BitTorrent file distribution network going back and forth between Xart and Haze Her video files as well as sequentially downloading episodes of a popular television show para passu between one and the other.

Theory B is that there is no fantastical explanation.  The same person did all the infringements.

With a preponderance standard, we feel good with our position within this arena. At trial we will demonstrate the statistical unlikelihood that another user was assigned the same IP address and chose to download the same content as your client within a time frame directly before your client was assigned the IP address. We also disagree about Time Warner solely maintaining IP assignment data for six months.  A special database was created by TWC and other CAS participants to track and correlate dynamic IP addresses to the applicable subscriber for any receiving a notice from the Six Strikes program.  If the subscriber in this case received a notification from CAS, then there might be an additional dynamic IP address associated with this subscriber that would actually serve to increase the number infringements attributed to him/her.  You might want to seriously consider this avenue of attack in that it could serve to dig your client into a deeper hole.

=========================

"....to bolster your claim that my client is the infringer you reference "Additional Evidence" in paragraphs 25-28 of the Complaint. However, any BitTorrent activity listed for works not owned by Malibu Media is inadmissible under FRE 404. The reason for this is because "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." In other words, proving that my client is a "serial downloader" is not admissible to prove that on a particular date and time, my client downloaded Malibu's copyrighted titles. Further, introducing evidence of "other" downloads is not relevant and is actually prejudicial and thus not admissible for those reasons as well. Therefore, I can only assume the intended and sole purpose of mentioning the "Additional Evidence" is to increase the pressure to settle."

--------

It appears you misunderstand the purpose of the Additional Evidence.  It has nothing to do with the person's "character" or any "character trait".  We agree that it would be inane to assert that the Defendant is a "serial downloader" of other content, ergo they must be the Malibu infringer.  That is not our intent.

The Additional Evidence allows us to focus our preliminary investigation on the most likely party responsible for the claimed infringements. For example, in the case at hand the initial investigation has indicated that the likely infringer is a male under the age of 35. The infringer also engages in amateur (at a higher end level) photography, and probabilities are that he works (or is studying to work within) the health care space. Again, it is early on within this investigation and we are unable to complete it until we receive name discovery from the TWC.

Should we identify that the subscriber in this case, or another authorized user, conforms with our final analysis, then we will amend the Complaint and ask you if you will accept service on their behalf. After you agree, we will conduct our 26F conference and then proceed into discovery. I have no doubt you will clearly explain to your client not to attempt to spoil evidence, but unfortunately the odds are high that they will not listen to you.

Discovery will eventually quantify that the Defendant is indeed the infringer. This has been universal. Some highly sophisticated Defendants have engaged in elaborate attempts to spoil evidence -- all with the same eventual result. Further discovery in the case amply allows us to prove our case to our desired "reasonable doubt" standard, let alone the requisite "prepondance" standard. Within the context of the actual trial, elements of the Additional Evidence not relating to "character" or "character traits" certainly would be admissible. Indeed, numerous judges, including Judge Baylson in the Bellwether trial have found this evidence relevant and refused to strike it.

The Additional Evidence is the least worry for a guilty Defendant in one of these suits and should present no "pressure" to settle. The main, and really only, "pressue" within these Malibu Media cases relates to the exposure to Statutory Damages and fees. If you are unhappy with the fact that "pressure" does exists consequent to those realities, Congress is currently holding hearings as to whether changes should be made. Perhaps you should become a panelist in one of the future hearings in order to express your opinions relating to this facet of copyright law.

To be ultimately clear, if your client is not responsible for these infringements, then we strongly advise AGAINST them settling and they obviously have no legal, moral or any other reason to send Malibu Media one penny.

======================

"Second, the Complaint fails to state a claim. What Plaintiff alleges to have been copied is not the movies on Exhibit B, nor is it the "correlating" hash files listed on Exhibit A. Instead, Plaintiff alleges,....."19. IPP International UG downloaded from Defendant one or more bits of each of the digital movie files identified by the file hashes on Exhibit A. (Again at ph. 22)."....Alleging that "one or more bits" were copied by the Plaintiff's agent does not equate an alleged infringement by my client of the work Plaintiff claims to own. Here, the only thing alleged to have been infringed are "one or more bits" of a "hash file" that "correlate to" movie files......."[C]opying an encrypted, unusable piece of a video file via the Bittorrent protocol may not be copyright infringement. [What is being taken is] an encrypted, unusable chunk of zeroes and ones. And as part of its prima facie copyright claim, Plaintiff must show that Defendants copied the copyrighted work. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). If a download was not completed, Plaintiff's lawsuit may be deemed frivolous." .....Ingenuity 13, LLC v. John Doe, 2:12-cv-8333-ODW, ECF No. 48 (C.D. Cal. Feb. 7, 2013). .....Plaintiff has filed 2,500+ lawsuits, ostensibly some these suits include the same film(s) at issue here. Assuming, 1) Plaintiff does not want to provide an accounting of what's been collected to date in compliance with the single satisfaction rule;..."

-------

The main issue you refer to here has been litigated in front of many of judges. If you are lucky, you will find 4 of them within the entirety of the Federal Judiciary who agree with you. Having a Plaintiff like Ingenuity certainly makes Defense counsel work a tad easier. If you file a Motion to Dismiss based upon the theories you describe here, your chances of prevailing, statistically, are < 1%.

As to the accounting relating to the single satisfaction rule, there is nothing in the copyright statute that limits Malibu Media's ability to recover multiple statutory damages for a single work. Malibu is not alleging joint and several liability in these individual Defendant suits. Even so, accountings already exist and settlements in totality do not even approach "maximizing" the available statutory damage amounts for any given Work.

==================================================

"My client is willing to pay $449.95—the cost of filing the Complaint and a one month subscription to Plaintiff's website."

----

Based upon the information within our possession at this moment, your offer is unfortunately rejected. As indicated previously, if your client is not responsible for these infringements, then they should not pay any settlement whatsoever. Even if your client is responsible for these infringements, there are some situations where we will dismiss the case without settlement.

Possibly, this client might qualify for an immediate dismissal, and all that is needed is for you to convey the applicable information. Should your client (assuming they are the infringer) not qualify for dismissal per any of the above, then it still is very possible that they qualify for a greatly reduced settlement demand due to "hardship".

If you desire to see if your client qualifies, we simply need you to provide your client's name and street address, and we will investigate and get back to you expeditiously with an answer. Of course, this information will be used solely to analyze whether "hardship" applies, and Malibu Media would be willing to execute an NDA to that effect. Or, we can simply wait for TWC to respond to the subpoena, and if hardship is determined we will unilaterally reduce our demand as a matter of policy.

=====================================

"As an aside, you may want to change paragraph 12 of the Complaint, as it contains a knowing misstatement regarding DMCA notices and the necessity of the John Doe subpoenas....1.… The methodology of BitTorrent allows users to interact directly with each other, thus avoiding the need for intermediary host websites which are subject to DMCA take down notices and potential regulatory enforcement actions.

Truth is, torrent files are typically published on websites or elsewhere, and Malibu routinely issues DMCA notices to these sites. Often on the same day it publishes the works it files suit over. A simple Google search will confirm this."

--------

Yes, you are correct that DMCA notices can be sent to "torrent sites" which provide either Magnet Links or alternatively store "torrent files". However, DHT is becoming increasingly popular thus obviating the need for any torrent file or site:

http://en.wikipedia.org/wiki/BitTorrent#Decentralized_keyword_search

Should the entirety of all torrent sites be wiped off the face of the earth (and space considering the Pirate Bay's stated plans to launch their own satellite), BitTorrent users would instantly all switch to DHT and the infringement within BT would go on unabated.

Obviously, short of SOPA (which we both know will never happen), it is absolutely impossible to remove/delete/make disappear all of the sites hosting torrent files or magnet links. Additionally, Malibu could send 1 gazillion DMCA notices to the Pirate Bay, and it will have zero effect.

http://www.webpronews.com/the-pirate-bay-responds-to-shrek-takedown-request-2012-05

Malibu Media sends a voluminous amount of DMCA notices to remove Google links, listings on torrent sites, listings on "one-click" sites, Twitter, as well as various and sundry other hosted websites. Ironically, Malibu is often attacked for this by people who think the DMCA is "abusive" or the like and that removing all these links "hurts" or makes the Internet "feel bad".

Malibu sends these DMCA notices because each link that is removed increases the odds of a user clicking on a link that will lead to a legal subscription as opposed to an illicit download. Additionally, each search result which goes to a post on DieTroll or a white paper on Malibu suits or an article on Ars Technica about some Malibu case or the other -- that also provides incentive to click the legal link as opposed to the one leading to a pirated copy.

The gist of your argument is that you think there is a viable way or "magic trick" to combat BitTorrent based piracy instead of suits filed against those actually distributing content on BitTorrent. Obviously, this trick does not exist, or else Hollywood would not have needlessly subjected themselves to this brutal "double-milker":

http://www.nytimes.com/2013/10/22/opinion/politicians-extortion-racket.html

In my opinion, attempting to imply that this couple from Malibu, CA is able to combat BitTorrent piracy of their copyrighted Works by doing anything OTHER than filing John Doe lawuits is what actually would be a "knowing misstatement".

========

Hopefully some of this information assists you in your decision on how best to proceed in the representation of this particular client.  If you have any further questions, I would be happy to attempt to answer them.

At your convenience, please let me know how you desire to proceed in this case.

Thank You,

--
**Yousef M. Faroniya**
CEO and Attorney at Law
YMF Inc.
84 S. 4th St.
Columbus, Ohio 43215
(614) 961-6606
yousef@YMFincorporated.com
YMFincorporated.com

CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in an attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.

**From:** Yousef Faroniya <yousef@ymfincorporated.com>
**Subject:** **Malibu Media, LLC v IP 65.189.10.120 case: 1:14-cv-00493-TSB SOH54-1**
**Date:** August 12, 2014 4:37:50 PM EDT
**To:** jsweet@boothsweet.com

Jason,

I am confused by your initial query.  This is my email address, and I am the only one who receives and responds to communications sent to it.  Malibu has instructed me, along with all other counsel on Malibu Media cases nationwide, to communicate with opposing counsel in writing only.  Other opposing counsel in the past have exaggerated, if not completely fabricated, contents of verbal conversations concerning these cases. Reducing our conversations to writing avoids this potentiality.

As I indicated in my previous communication to you, if you think we are wrong on the law here, then put it in a pleading and let Judge Black determine if your arguments are persuasive. The position of my client previously conveyed is quite clear.  If they are unable to confidently ascertain who the responsible party is, then they will dismiss the Complaint.

Conversely, if they are able to confidently identify the responsible party, then this Complaint will be amended and the case will proceed against the specific Defendant named in the amended Complaint.

As always, should the Defendant desire to proceed anonymously through discovery, then my client will not oppose that requested relief.


Thank You,

--
**Yousef M. Faroniya**
CEO and Attorney at Law
YMF Inc.
84 S. 4th St.
Columbus, Ohio 43215
(614) 961-6606
yousef@YMFincorporated.com
YMFincorporated.com

CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.



**From:** Jason Sweet <jsweet@boothsweet.com>
**Subject:** **Malibu**
**Date:** August 19, 2014 5:00:51 PM EDT
**To:** Yousef Faroniya <yousef@ymfincorporated.com>

Yousef

I haven't received a response to the email I sent you last week. Does Malibu intend to answer any of the questions/issues I raised?

Regards,
Jason

Sent from my iPhone

**From:** Yousef Faroniya <yousef@ymfincorporated.com>
**Subject:** **Malibu Media, LLC v IP 65.189.10.120 case: 1:14-cv-00493-TSB SOH54-1**
**Date:** August 19, 2014 9:19:02 PM EDT
**To:** jsweet@boothsweet.com

Jason,

It has come to my attention that you have contacted Time Warner instructing them not to comply with subpoena sent to them on the basis that we are in settlement negotiations. My Client has not agreed to postpone the delivery of your client's identity from Time Warner. Your instruction to them is, and was intended to, delay their compliance and cause them to fail to timely comply. As you are aware, this interference with a third party subpoena is improper.  Please instruct Time Warner to cease holding your client's name in abeyance. Should you fail to do so, I will advise the Court accordingly.

Thanks.

--
**Yousef M. Faroniya**
CEO and Attorney at Law
YMF Inc.
84 S. 4th St.
Columbus, Ohio 43215
(614) 961-6606
yousef@YMFincorporated.com
YMFincorporated.com

CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.

**From:** "jsweet@boothsweet.com" <jsweet@boothsweet.com>
**Subject:** **Re: Malibu Media, LLC v IP 65.189.10.120 case: 1:14-cv-00493-TSB SOH54-1**
**Date:** August 20, 2014 1:43:09 PM EDT
**To:** Yousef Faroniya <yousef@ymfincorporated.com>



▶  1 Attachment, 13.2 KB

Yousef

I just left a VM for you. If there a time we can talk?

Jason


On Aug 19, 2014, at 9:19 PM, Yousef Faroniya wrote:

Jason,

It has come to my attention that you have contacted Time Warner instructing them not to comply with subpoena sent to them on the basis that we are in settlement negotiations. My Client has not agreed to postpone the delivery of your client's identity from Time Warner. Your instruction to them is, and was intended to, delay their compliance and cause them to fail to timely comply. As you are aware, this interference with a third party subpoena is improper.  Please instruct Time Warner to cease holding your client's name in abeyance. Should you fail to do so, I will advise the Court accordingly.

Thanks.

--
**Yousef M. Faroniya**
CEO and Attorney at Law
YMF Inc.
84 S. 4th St.
Columbus, Ohio 43215
(614) 961-6606
yousef@YMFincorporated.com
YMFincorporated.com

CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.


IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter addressed in this communication (or in any attachment).


Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.


Jason Sweet
Booth Sweet LLP
32R Essex Street
Cambridge, MA 02139
T: (617) 250-8619

F: (617) 250-8883
www.boothsweet.com
www.facebook.com/BoothSweet

This e-mail is from the law firm Booth Sweet LLP, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments.

BOOTH SWEET LLP

|        |                                                                      |
|--------|----------------------------------------------------------------------|
| From:  | Yousef Faroniya <yousef@ymfincorporated.com>                         |
| Subject: | **Re: Malibu Media, LLC v IP 65.189.10.120 case: 1:14-cv-00493-TSB SOH54-1** |
| Date:  | August 20, 2014 2:02:40 PM EDT                                       |
| To:    | Jason Sweet <jsweet@boothsweet.com>                                 |

Jason,

Your request for information is premature.  You do not get to demand a quid pro quo in return for compliance of an issued subpoena.  Malibu Media will comply with all appropriate discovery requests at the applicable time.  At this stage of the case, a proper subpoena has been issued to Time Warner.  You are improperly interfering with it.  If you do not contact Time Warner today and withdraw your objections to the compliance with this subpoena, then we will be filing a Motion for Sanctions.

YmF

On Tue, Aug 19, 2014 at 9:47 PM, Jason Sweet <jsweet@boothsweet.com> wrote:
> Yousef
>
> As an initial matter, Malibu proposed a sharing of information. My client proposed revealing his identity in exchange for information in Malibu's possession. To date, Malibu has remained non-committal and non-cooperative.
>
> I will call you tomorrow to discuss.
>
> Jason
>
> Sent from my iPhone
>
>
> On Aug 19, 2014, at 9:19 PM, Yousef Faroniya <yousef@ymfincorporated.com> wrote:
>
>> Jason,
>>
>> It has come to my attention that you have contacted Time Warner instructing them not to comply with subpoena sent to them on the basis that we are in settlement negotiations. My Client has not agreed to postpone the delivery of your client's identity from Time Warner. Your instruction to them is, and was intended to, delay their compliance and cause them to fail to timely comply. As you are aware, this interference with a third party subpoena is improper.  Please instruct Time Warner to cease holding your client's name in abeyance. Should you fail to do so, I will advise the Court accordingly.
>>
>> Thanks.
>>
>> --
>> **Yousef M. Faroniya**
>> CEO and Attorney at Law
>> YMF Inc.
>> 84 S. 4th St.
>> Columbus, Ohio 43215
>> (614) 961-6606
>> yousef@YMFincorporated.com
>> YMFincorporated.com
>>
>> CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.
>>
>> IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter

addressed in this communication (or in any attachment).

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.


--
**Yousef M. Faroniya**
CEO and Attorney at Law
YMF Inc.
84 S. 4th St.
Columbus, Ohio 43215
(614) 961-6606
yousef@YMFincorporated.com
YMFincorporated.com

CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.



**From:** Jason Sweet <jsweet@boothsweet.com>
**Subject:** **Re: Malibu Media, LLC v IP 65.189.10.120 case: 1:14-cv-00493-TSB SOH54-1**
**Date:** August 20, 2014 2:13:44 PM EDT
**To:** Yousef Faroniya <yousef@ymfincorporated.com>

Yousef

As I said in my vm to you, I am currently out of the office. That being said I will call you again within the hour. I suggest you answer your phone.

I have no control over when Time Warner chooses to comply with your subpoena. I have not advised to not comply, to not timely comply or provided any reason not to comply. This is substantiated by a vm and an email in my possession from Time Warner. If you feel you have evidence of interference, by all means send me copies. But again, if you bothered to answer your phone you wouldn't need to resort to such threats.

Jason

Sent from my iPhone


On Aug 20, 2014, at 2:02 PM, Yousef Faroniya <yousef@ymfincorporated.com> wrote:

> Jason,
>
> Your request for information is premature. You do not get to demand a quid pro quo in return for compliance of an issued subpoena. Malibu Media will comply with all appropriate discovery requests at the applicable time. At this stage of the case, a proper subpoena has been issued to Time Warner. You are improperly interfering with it. If you do not contact Time Warner today and withdraw your objections to the compliance with this subpoena, then we will be filing a Motion for Sanctions.
>
> YmF
>
>> On Tue, Aug 19, 2014 at 9:47 PM, Jason Sweet <jsweet@boothsweet.com> wrote:
>> Yousef
>>
>> As an initial matter, Malibu proposed a sharing of information. My client proposed revealing his identity in exchange for information in Malibu's possession. To date, Malibu has remained non-committal and non-cooperative.
>>
>> I will call you tomorrow to discuss.
>>
>> Jason
>>
>> Sent from my iPhone
>>
>>> On Aug 19, 2014, at 9:19 PM, Yousef Faroniya <yousef@ymfincorporated.com> wrote:
>>> Jason,
>>>
>>> It has come to my attention that you have contacted Time Warner instructing them not to comply with subpoena sent to them on the basis that we are in settlement negotiations. My Client has not agreed to postpone the delivery of your client's identity from Time Warner. Your instruction to them is, and was intended to, delay their compliance and cause them to fail to timely comply. As you are aware, this interference with a third party subpoena is improper. Please instruct Time Warner
>>> to cease holding your client's name in abeyance. Should you fail to do so, I will advise the Court accordingly.
>>>
>>> Thanks.
>>>
>>> --

**Yousef M. Faroniya**
CEO and Attorney at Law
YMF Inc.
84 S. 4th St.
Columbus, Ohio 43215
(614) 961-6606
yousef@YMFincorporated.com
YMFincorporated.com

CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.


--
**Yousef M. Faroniya**
CEO and Attorney at Law
YMF Inc.
84 S. 4th St.
Columbus, Ohio 43215
(614) 961-6606
yousef@YMFincorporated.com
YMFincorporated.com

CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.



**From:** Jason Sweet <jsweet@boothsweet.com>
**Subject:** **Re: Malibu Media, LLC v IP 65.189.10.120 case: 1:14-cv-00493-TSB SOH54-1**
**Date:** August 20, 2014 2:53:20 PM EDT
**To:** Yousef Faroniya <yousef@ymfincorporated.com>

Yousef

I'm not sure how the Court will view a sanctions motion brought by you when you refuse to confer with me.

I just left you another vm. I'm on the road right now, but if you'd like to talk my cell is 617-620-4762. My office is 617-250-8619. I will be in tomorrow from 9-4 est.

Jason

Sent from my iPhone

On Aug 20, 2014, at 2:02 PM, Yousef Faroniya <yousef@ymfincorporated.com> wrote:

> Jason,
>
> Your request for information is premature. You do not get to demand a quid pro quo in return for compliance of an issued subpoena. Malibu Media will comply with all appropriate discovery requests at the applicable time. At this stage of the case, a proper subpoena has been issued to Time Warner. You are improperly interfering with it. If you do not contact Time Warner today and withdraw your objections to the compliance with this subpoena, then we will be filing a Motion for Sanctions.
>
> YmF
>
>> On Tue, Aug 19, 2014 at 9:47 PM, Jason Sweet <jsweet@boothsweet.com> wrote:
>>> Yousef
>>>
>>> As an initial matter, Malibu proposed a sharing of information. My client proposed revealing his identity in exchange for information in Malibu's possession. To date, Malibu has remained non-committal and non-cooperative.
>>>
>>> I will call you tomorrow to discuss.
>>>
>>> Jason
>>>
>>> Sent from my iPhone
>>>
>>>> On Aug 19, 2014, at 9:19 PM, Yousef Faroniya <yousef@ymfincorporated.com> wrote:
>>>>> Jason,
>>>>>
>>>>> It has come to my attention that you have contacted Time Warner instructing them not to comply with subpoena sent to them on the basis that we are in settlement negotiations. My Client has not agreed to postpone the delivery of your client's identity from Time Warner. Your instruction to them is, and was intended to, delay their compliance and cause them to fail to timely comply. As you are aware, this interference with a third party subpoena is improper. Please instruct Time Warner
>>>>> to cease holding your client's name in abeyance. Should you fail to do so, I will advise the Court accordingly.
>>>>>
>>>>> Thanks.
>>>>>
>>>>> --
>>>>> **Yousef M. Faroniya**
>>>>> CEO and Attorney at Law

YMF Inc.
84 S. 4th St.
Columbus, Ohio 43215
(614) 961-6606
yousef@YMFincorporated.com
YMFincorporated.com

CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.

--
Yousef M. Faroniya
CEO and Attorney at Law
YMF Inc.
84 S. 4th St.
Columbus, Ohio 43215
(614) 961-6606
yousef@YMFincorporated.com
YMFincorporated.com

CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.

| | |
|---|---|
| **From:** | Yousef Faroniya <yousef@ymfincorporated.com> |
| **Subject:** | **RE: 65.189.10.120; Case No. 1:14-cv-493 Ohio Southern District Subpoena** |
| **Date:** | August 20, 2014 4:33:17 PM EDT |
| **To:** | "Harris, Sean" <sean.harris2@twcable.com> |
| **Cc:** | Jason Sweet <jsweet@boothsweet.com> |

Good afternoon Sean:

Please find in the following an email from Mr. Sweet stating that he is not interfering with our subpoena. Mr. Sweet is also copied on this email. There are no substantial negotiations and no motion to quash a subpoena has been filed. Therefore we respectfully request that information be released in accordance with the subpoena at your earliest convenience.

Thank you for all your assistance.

---------- Forwarded message ----------
From: **Jason Sweet** <jsweet@boothsweet.com>
Date: Wed, Aug 20, 2014 at 2:13 PM
Subject: Re: Malibu Media, LLC v IP 65.189.10.120 case: 1:14-cv-00493-TSB SOH54-1
To: Yousef Faroniya <yousef@ymfincorporated.com>


Yousef

As I said in my vm to you, I am currently out of the office. That being said I will call you again within the hour. I suggest you answer your phone.

I have no control over when Time Warner chooses to comply with your subpoena. I have not advised to not comply, to not timely comply or provided any reason not to comply. This is substantiated by a vm and an email in my possession from Time Warner. If you feel you have evidence of interference, by all means send me copies. But again, if you bothered to answer your phone you wouldn't need to resort to such threats.

Jason

Sent from my iPhone


--
**Yousef M. Faroniya**
CEO and Attorney at Law
YMF Inc.
84 S. 4th St.
Columbus, Ohio 43215
(614) 961-6606
yousef@YMFincorporated.com
YMFincorporated.com

CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.



**From:** Jason Sweet <jsweet@boothsweet.com>
**Subject:** **Re: 65.189.10.120; Case No. 1:14-cv-493 Ohio Southern District Subpoena**
**Date:** August 20, 2014 5:02:02 PM EDT
**To:** Yousef Faroniya <yousef@ymfincorporated.com>

Yousef

Saw your email to Time Warner. And I left you yet another vm. I don't know why you refuse to speak with me, but if you pursue litigation without talking to me I will inform the court of your obstinate behavior and how it unnecessarily multiplied the proceedings.

Jason

Sent from my iPhone

On Aug 20, 2014, at 4:33 PM, Yousef Faroniya <yousef@ymfincorporated.com> wrote:

Good afternoon Sean:

Please find in the following an email from Mr. Sweet stating that he is not interfering with our subpoena. Mr. Sweet is also copied on this email. There are no substantial negotiations and no motion to quash a subpoena has been filed. Therefore we respectfully request that information be released in accordance with the subpoena at your earliest convenience.

Thank you for all your assistance.

---------- Forwarded message ----------
From: **Jason Sweet** <jsweet@boothsweet.com>
Date: Wed, Aug 20, 2014 at 2:13 PM
Subject: Re: Malibu Media, LLC v IP 65.189.10.120 case: 1:14-cv-00493-TSB SOH54-1
To: Yousef Faroniya <yousef@ymfincorporated.com>

Yousef

As I said in my vm to you, I am currently out of the office. That being said I will call you again within the hour. I suggest you answer your phone.

I have no control over when Time Warner chooses to comply with your subpoena. I have not advised to not comply, to not timely comply or provided any reason not to comply. This is substantiated by a vm and an email in my possession from Time Warner. If you feel you have evidence of interference, by all means send me copies. But again, if you bothered to answer your phone you wouldn't need to resort to such threats.

Jason

Sent from my iPhone

--
**Yousef M. Faroniya**
CEO and Attorney at Law
YMF Inc.
84 S. 4th St.
Columbus, Ohio 43215
(614) 961-6606
yousef@YMFincorporated.com
YMFincorporated.com

CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or

other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.

**From:** Yousef Faroniya <yousef@ymfincorporated.com>
**Subject:** **Malibu Media, LLC v IP 65.189.10.120 case: 1:14-cv-00493-TSB SOH54-1**
**Date:** August 20, 2014 8:12:14 PM EDT
**To:** Jason Sweet <jsweet@boothsweet.com>

Jason,

You did not contact Time Warner in order to expedite the compliance with the subpoena.  In fact, you had the opposite intention.  If you wish to convey any further information to me, then you can send it via email.

--
**Yousef M. Faroniya**
CEO and Attorney at Law
YMF Inc.
84 S. 4th St.
Columbus, Ohio 43215
(614) 961-6606
yousef@YMFincorporated.com
YMFincorporated.com

CONFIDENTIALITY NOTE: This message originates from Yousef M. Faroniya, Esq. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this message or its attachments is strictly prohibited. This message may not be copied or distributed without this disclaimer. If you received this message in error, please notify us immediately at: yousef@ymfincorporated.com. Thank you.

IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii), marketing, or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

Pursuant to the Fair Debt Collection Practices Act, you are advised that this office may be deemed to be a debt collector and any information obtained may be used for that purpose.



From: "jsweet@boothsweet.com" <jsweet@boothsweet.com>
Subject: **Malibu Media, LLC v IP 65.189.10.120 case: 1:14-cv-00493-TSB SOH54-1**
Date: August 21, 2014 2:16:10 PM EDT
To: Yousef Faroniya <yousef@ymfincorporated.com>

▶   1 Attachment, 13.2 KB

Yousef

Please note that I will accept service on behalf of John Doe / IP 65.189.10.120, thus obviating the need for the subpoena requesting his identity. I will accept service via email, mail or fax.

If Malibu chooses not to effectuate service through me, any further costs incurred in identifying my client or in attempting an alternate means of service upon him will be borne by Malibu alone.

Please inform me by the end of the day what Malibu decides. If Malibu agrees, please notify TimeWarner that the subpoena is void cc'ing me on the communication.

Regards,
Jason

Jason Sweet
Booth Sweet LLP
32R Essex Street
Cambridge, MA 02139
T: (617) 250-8619
F: (617) 250-8883
www.boothsweet.com
www.facebook.com/BoothSweet

This e-mail is from the law firm Booth Sweet LLP, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments.

BOOTH SWEET LLP