## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

```
----------------------------------------------------------------X
                                              :
MALIBU MEDIA, LLC,                            :
                                              :       Civil Action No. 1:14-cv-493-TSB
                          Plaintiff,          :
                                              :
             vs.                              :
                                              :
JOHN DOE subscriber assigned IP address       :
65.189.10.120,                                :
                                              :
                          Defendant.          :
                                              :
----------------------------------------------------------------X
```

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO QUASH PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PRTY [SIC] SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE AS MOOT

## I.     INTRODUCTION

Plaintiff respectfully requests the Court deny Defendant's motion.   "If you don't know where you are going, you might wind up someplace else." -Yogi Berra.  Defendant is seeking to have Plaintiff litigate against an anonymous person – not only to the world but to Plaintiff as well.  Defendant's counsel has engaged in a calculated effort to delay and obfuscate discovery in order to cause Plaintiff to wind up someplace other than at the footsteps of the party responsible for the infringements pled in this Complaint.  Plaintiff should not be denied its rights to know the party it is proceeding against in a lawsuit.  Further, this Court should deny Defendant's motion because Defendant fails to provide any reason under Fed. R. Civ. P. 45 to quash the subpoena.  And, Plaintiff has every intention to litigate in good faith as demonstrated by its record in this district and nationwide.  For all the foregoing reasons, as set forth below, this Court should deny Defendant's motion.

1

II.     **FACTS**

    A.  Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business

Plaintiff, Malibu Media LLC, brings its lawsuit against Defendant in good faith in order to stop ongoing, long term, copyright infringement. Colette Pelissier Field, with her husband Brigham Field, are the owners of Malibu Media and began their business from scratch. *See* CM/ECF 2-2 at ¶3. Ms. Field was a real estate agent and Mr. Field was a photographer. *Id*. at ¶ 4. When the real estate market started heading south, Ms. Field knew she and her husband needed to start a business together. *Id*. at ¶ 5. The Fields both felt that there was a lack of adult content that was beautiful and acceptable for women and couples. *Id*. at ¶ 6. The Fields wanted to create this type of content to satisfy what they hoped was an unfulfilled demand. *Id*. Their goal was to create erotica that is artistic and beautiful. *Id*. at ¶ 7. The Fields chose the name 'X-Art' to reflect their artistic aspirations, and began investing all of their available money and resources into the production of content – particularly erotic movies with high production value and a cinematic quality. *Id.* at ¶ 8.

Their vision has come to fruition. Currently, X-Art.com has tens of thousands of members, but the Fields are finding it hard to grow and maintain the memberships when so many people are finding their films for free. *Id.* at ¶ 15. They have worked hard and invested millions of dollars into their business in order to produce the best quality product. *Id*. at ¶ 14. For the first three years (when their site was not as popular) they did not have as many issues with piracy. *Id.* at ¶ 18. Now that their videos are highly desirable, more people steal their videos than pay for a subscription. *Id*. Malibu Media receives many complaints from its members asking why they should pay to subscribe when Malibu Media's movies are available for free through BitTorrent. *Id*. at ¶ 19. Malibu Media invests significant resources into pursuing all

types of anti-piracy enforcement, such as Digital Millenium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites. *Id.* at ¶ 27. Despite sending thousands of DMCA notices per week, the infringement continues. *Id*. at ¶ 28. And, if one searches for "X-Art" on a torrent website the site will reveal thousands of unauthorized torrents available for free. *Id*. Plaintiff Malibu Media has filed suit in this judicial District and in judicial districts across the country seeking to deter and stop the infringement.

Defendant's criticism of Plaintiff's copyright protection efforts is unjustified. Courts have recognized the criticism such as Defendant's is unfounded. Indeed, "[m]any internet blogs commenting on [these types of cases] ignore the rights of copyright owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek injunctions and damages." *Malibu Media, LLC v. John Does 1, 6, 13, 14 and Bryan White*, 2013 WL 3038025 at n.1 (E.D. Pa. June 18, 2013). Last June, Plaintiff won the first ever BitTorrent copyright infringement lawsuit to reach trial. *See Id*. In his Memorandum Report after the conclusion of the trial, the Honorable Judge Baylson made a number of significant findings. Importantly, Judge Baylson found "Malibu Media Malibu has satisfied its burden of proof with substantial evidence and deserves a large award*." Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A. 12-2078, 2013 WL 3038025 (E.D. Pa. June 18, 2013).

    B. Courts throughout the Country Have Expressly Found that Malibu Media's Counsel do not Engage in Improper Litigation Tactics

Judge Baylson expressly emphasized that "Malibu is *not* what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll' . . . Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works." *Id.* (Emphasis in original).

3

Other courts have also opined that the criticism Plaintiff receives is unwarranted. "[T]he Court has also witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement." *Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, 2013 WL 1777710 (D. Colo. Feb. 12, 2013). *See also Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291, at *4 (S.D.N.Y. 2012) (same); *Malibu Media, LLC v. John Does 1-30*, 2:12-cv-13312-DPH-MJH [CM/ECF 61] at p. 15 (E.D. Mich. May 16, 2013) (same); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618 at *7 (N.D. Ill. Mar. 7, 2013) ("the fact that suits of this nature settle quickly does not mean there is any wrongdoing on the part of copyright owners."); *Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] at p. 7 (M.D. Fla. July 6, 2012) (same).

C. <u>Malibu Media has a Real Problem with Piracy in Ohio</u>

| Month | US Total | US Suits | US %sued | US Works | OH Total | OH Suits | OH %sued | OH Works |
|-------|----------|----------|----------|----------|----------|----------|----------|----------|
| May | 81569 | 138 | 0.17% | 37 | 2528 | 35 | 1.38% | 55 |
| June | 79834 | 192 | 0.24% | 41 | 2338 | 40 | 1.71% | 51 |
| July | 73584 | 115 | 0.16% | 37 | 2296 | 36 | 1.57% | 40 |
| August* | 52740 | 200 | 0.38% | 38 | 1598 | 42 | 2.63% | 49 |
| September | N/A | 67 | NA | 25 | NA | 19 | NA | 28 |
| **Total** | **287727** | **712** | **0.22%** | **37** | **8760** | **172** | **1.96%** | **46** |

* August Infringement Totals are through 8/20

Above is a chart summarizing the amount of individuals throughout the United States and Ohio that have infringed Malibu Media's works from May through August. "US Total" refers to the number of unique individual infringements. "US Suits" refers to the number of suits nationwide that Malibu Media has brought against infringers of its movies. "US Works" refers to the average number of infringed works per suit. In May, 81,569 unique IP addresses infringed Malibu Media's movies in the United States. Of these infringements, Malibu Media brought 138

suits against the absolute worst of the worst infringers.  This figure represents only 0.17% of the total infringers nationwide.  In each of these suits, the average number of infringements of Malibu Media's works was 37 movies.

Likewise, in Ohio 2,528 individuals infringed Malibu Media's works in May.  Of the 35 suits brought by Malibu Media in that month, the average IP address infringed 55 <u>separate</u> movies owned by Malibu Media.  And, Malibu sued only 1.38% of all infringers of its copyrights in Ohio.

The scale of infringement is staggering.  Indeed, in Ohio, Malibu Media's investigators have recorded infringement in 86 of 88 counties.  *See* Exhibit A.  Malibu Media has no choice but to bring suit against the worst of the worst infringers in order to stop the epidemic.

    D.  <u>The Infringer</u>

Defendant infringed 30 (thirty) of Plaintiff's copyrighted works between July 21, 2013 and April 6, 2014.  *See* Complaint Exhibit A at CM/ECF 1-1.  Indeed, Defendant has illegally downloaded Plaintiff's movies for nearly nine months.  By downloading each of these movies through the BitTorrent protocol, Defendant simultaneously distributes these movies to others, allowing other people to also steal Plaintiff's movies.  *See* Complaint, at ¶¶ 11 -20.

The length of time which Plaintiff's investigator recorded Defendant infringing Plaintiff's movies demonstrates that the infringer was not a mere guest or passerby.  It was someone with access to Defendant's Internet for a long period of time, consistently.

**III.    THE COURT SHOULD NOT QUASH THE SUBPOENA**

"Federal Rule of Civil Procedure 45(c)(3) enumerates four situations in which a court 'must' either modify or quash a subpoena and three situations in which a court 'may.'"  *Patrick Collins, Inc. v. John Does 1-28*, 12-13670, 2013 WL 359759 (E.D. Mich. Jan. 29, 2013).  A

court must modify or quash a subpoena that fails to allow a reasonable time to comply; requires a non-party to travel more than 100 miles (except for trial within the state); requires disclosure of privileged materials; or, subjects a person to undue burden.  *See* Fed. R. Civ. P. 45(c)(3)(A)(i-iv). A court may modify or quash a subpoena when the subpoena requires disclosure of trade secrets; disclosure of certain expert opinions; or, requires a nonparty to incur substantial expense to travel more than 100 miles to attend a trial.  *Id.*  "No other grounds are listed."  *Malibu Media, LLC v. John Does 5-8*, 2013 WL 1164867 at \*2 (D. Colo. 2013) (denying motion to quash in similar BitTorrent copyright infringement action where defendant's motion failed to articulate a reason to quash the subpoena that complied with Rule 45).

A. <u>Defendant's Motion Fails to Provide a Valid Reason Under Rule 45 to Quash the Subpoena</u>

On August 22, 2014 your Honor granted Plaintiff leave to serve a Rule 45 subpoena on Time Warner Cable to receive the identity of the Defendant.  [CM/ECF 8].  Defense counsel, prior to even entering an appearance for the Defendant, contacted Time Warner in reference to the subpoena issued to it pursuant to this Court's Order and ordered them not to release Defendant's identity.  *See* Exhibit B.  Nowhere in Fed. R. Civ. P .45 is it contemplated that the adversary of the party seeking discoverable information may advise, no matter what the reasons, the person commanded by the subpoena to simply ignore the subpoena's command.  Yet, that is exactly what happened here.  Defense counsel took it upon himself to unilaterally contact Time Warner in an attempt to delay compliance with it.

Defendant now moves to quash the subpoena but has failed to provide any valid reason under the rules.  Instead, Defendant's motion attempts to moot the discovery and claims that Defendant may not be the infringer.  First, under Rule 45, that the discovery is "moot" is not a reason to quash the subpoena.  *See* Fed. R. Civ. P. 45.  Second, "the fact that the ISP-identified

subscriber is not necessarily the infringer is not grounds to quash a subpoena served on the ISP[.]" *Malibu Media LLC v. John Does 1-28*, 2012 WL 7748917, at *12 (E.D. Mich. 2012). Indeed, "[a] general denial of liability . . . is not a basis for quashing the plaintiff's subpoenas and preventing the plaintiff from obtaining the putative defendants' identifying information." *Malibu Media LLC v. John Does 1-28*, 2012 WL 7748917, at *12 (E.D. Mich. 2012) quoting *Voltage Pictures, LLC v. Does 1–5,000,* 818 F.Supp.2d 28, 35 (D.D.C.2011). *See also Sojo Prods. Inc. v. Does 1-67*, 2013 WL 1759561, at *2 (E.D. Tenn. 2013) ("The putative Defendants may deny their liability once served with process in this case through appropriate pleadings, motions, or evidence at trial. A motion to quash is not the forum for addressing general denials of liability."). Arguments that go to the merits of Plaintiff's claims "do not address the propriety *vel non* of the subpoenas" and are therefore "irrelevant and premature." *Malibu Media, LLC v. John Does 1-14*, 287 F.R.D. 513, 517 (N.D. Ind. 2012).

    B. Plaintiff Must Obtain the Subpoena Response From Defendant's ISP to Protect its
       Copyrights

Without the identifying information of the internet subscriber who used Defendant's IP address to violate Plaintiff's copyrights, Plaintiff has no other way to begin to protect its copyrights against pervasive anonymous online infringement. "If the Court were to quash the subpoena as the Putative Defendants urge, it would be *impossible* for Malibu to protect its copyright against internet infringers." *Malibu Media, LLC v. John Does 1-6*, 2013 WL 2150679 at *5 (N.D. Ill. 2013) (denying motion to quash).

> [T]he Putative Defendants do not contest Malibu's argument that "the *only* way to enforce one's copyrights against online infringement is to subpoena the identity of the subscriber whose internet [connection] was used to commit the infringement." Even if, as the Putative Defendants contend, someone else used their internet connections to copy and distribute Malibu's films, the identity of IP address holders is relevant to Malibu's claims: it can provide a useful starting point for

identifying the actual infringer. Thus, the Court finds that the relevance of the IP address holders' identity outweighs the burden of its subpoena.

*Id.* (Citations omitted, emphasis added.)

Even if the subscriber is not the infringer, Rule 26 of the Federal Rules of Civil Procedure provides for broad discovery. Rule 26(b)(1) permits parties to obtain discovery of "the identity and location of persons who know of any discoverable matter." *Raw Films, Ltd. v. John Does 1-15*, 2012 WL 1019067, at *6 (E.D. Pa. 2012) (holding that although the subpoena may only identify the subscriber and may not reveal the infringer's identity, the subpoenas are a proper use of discovery.). *See also e.g. Malibu Media, LLC v. John Does 1-15*, 2012 WL 3089383 at *9 (E.D. Pa. 2012) (denying motion to quash subpoena in similar BitTorrent copyright infringement case holding that the relevancy standard was satisfied); *Malibu Media, LLC v. John Does No. 1-30*, 2012 WL 6203697 at *4 (D.N.J. 2012) (same). "Relevance is a broad concept at the discovery phase . . . The identity of the customers associated with the Alleged IP addresses is relevant under this standard . . . The subpoenas to the ISP, therefore, are a proper use of discovery." *Patrick Collins, Inc. v. John Does 1-9*, 2012 WL 4321718 at *4 (C.D. Ill. 2012).

C. Forcing Plaintiff to Litigate Against an Unknown Party is a Violation of Plaintiff's Due Process Rights

Defendant's argument that the subpoena should be quashed because defense counsel can accept service does not "moot" the subpoena because defense counsel has not offered to provide Defendant's identity. Plaintiff should not be forced to litigate against an unknown party. Indeed, courts have held that requiring a party to litigate against an unknown party "seriously implicate[s] due process". *See United States v. Microsoft Corp.*, 56 F.3d 1448, 1463-64 (D.C. Cir. 1995) citing *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir.1992) ("We are not aware of any

8

case in which a plaintiff was allowed to sue a defendant and still remain anonymous to that defendant. Such proceedings would, as Microsoft argues, seriously implicate due process.") The Eastern District of Michigan has held that allowing a party to proceed anonymously against another "would make the case unmanageable, since the Court would have no way of assessing standing, real parties in interest, jurisdiction, or damages." *Does v. Shalushi*, 10-11837, 2010 WL 3037789 (E.D. Mich. July 30, 2010).

"Basic fairness dictates that those among the defendants' accusers who wish to participate ... as individual party plaintiffs must do so under their real names." *Microsoft Corp.*, 56 F.3d 1463-64 citing *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707, 713 (5th Cir.1979). "The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them." *Morgan v. United States*, 304 U.S. 1, 18, 58 S. Ct. 773, 776, 82 L. Ed. 1129 (1938);. "[I]t is within the discretion of the district court to grant [the defendant] the 'rare dispensation' of anonymity against the world (but not the plaintiff')." *Sunlust Pictures, LLC v. Does 1-75*, 12 C 1546, 2012 WL 3717768 (N.D. Ill. Aug. 27, 2012).

In the Sixth Circuit, in cases where a party has been allowed to proceed anonymously, the opposing party has always been able to receive the anonymous party's identity. *See e.g. Doe v. Porter*, 370 F.3d 558, 561 (6th Cir. 2004) (finding no prejudice to a party during discovery when they receive the name of the anonymous party). Further, when evaluating whether to allow a party to proceed anonymously the Sixth Circuit finds "it is relevant to consider whether the [parties] are being forced to proceed with insufficient information to present their arguments." *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636 (6th Cir. 2005). Without knowing Defendant's identity, Plaintiff will not be able to examine its evidence and determine if it is

proceeding against the correct party, or evaluate any of Defendant's defenses.  Plaintiff would be forced to proceed without the absolute most critical information necessary.

## IV.  PLAINTIFF HAS DEMONSTRATED GOOD CAUSE TO RECEIVE DEFENDANT'S IDENTITY

### A.  Plaintiff Routinely Serves Defendants and Intends to Litigate

Defendant's argument that Plaintiff lacks any intention to litigate is misinformed and without merit.  Malibu Media's complaint has survived numerous motions to dismiss.  *See e.g. Malibu Media, LLC v. John Doe 1,* 2013 WL 30648 at *4 (E.D. Pa. 2013) ("Accepting all factual allegations in the Amended Complaints as true . . . the Court concludes Plaintiff has stated a claim upon which relief can be granted under the Copyright Act."); *Malibu Media, LLC v. Roldan*, 8:13-CV-3007-T-30TBM, 2014 WL 3805494 (M.D. Fla. Aug. 1, 2014) ("Plaintiff has alleged a plausible link between the subscriber assigned to IP address 96.58.134.12, Defendant, and the copyright infringement"); *Malibu Media, LLC v. Doe*, 313-CV-1579-J-32PDB, 2014 WL 2530872 (M.D. Fla. Apr. 10, 2014) ("[i]ts allegations, based on experience and practical realities, make plausible that the subscribers are the infringers"); *Malibu Media v. Roy*, Case No. 12-cv-617 (W.D. Mich.) (denying 12(b)(6) motion);*Malibu Media v. Pratt*, 1:12-cv-00621-RJJ, CM/ECF 31 (W.D. Mich. March 19, 2013) (same); *Malibu Media, LLC v. John Doe*, 2:13-cv-11446-AJT-DRG, CM/ECF 13 (E.D. Mich. Oct. 18, 2013) (same); *Malibu Media, LLC v. Lowry*, 2013 WL 6024371, at *5 (D. Colo. 2013) (same);*Malibu Media, LLC v. John Doe 1*, 2013 WL 30648 at *4 (E.D. Pa. 2013) (same); *Malibu Media, LLC v. Killoran*, 2:13-cv-11446-AJT-DRG, CM/ECF 13 (E.D. Mich. Oct. 18, 2013) (same); *Malibu Media, LLC v. John Doe*, 2:13-cv-00055-JVB-JEM, CM/ECF 22 (N.D. Ind. August, 16, 2013) (same);  *Malibu Media LLC v. Doe*, 2013 WL 3945978 (E.D. Mich. 2013) (same); *Malibu Media LLC v. Gilvin*, 2014 WL 1260110 (N.D. Ind. Mar. 26, 2014) (same); *Malibu Media, LLC v. Sanchez*, 2014 WL 172301 (E.D. Mich.

Jan. 15, 2014) (same); *Malibu Media, LLC v. Butler*, 13-cv-02707-WYD-MEH, CM/ECF 31 (D. Colo. April 24, 2014) (same).

Further, Plaintiff's complaint has survived summary judgment. *See Malibu Media, LLC v. Fitzpatrick*, 1:12-CV-22767, 2013 WL 5674711 (S.D. Fla. Oct. 17, 2013). And, Plaintiff has been awarded summary judgment in its favor. *See Malibu Media v. Bui*, 1:13-cv-163 (W.D. Mich. July 21, 2014). Plaintiff has even prevailed at trial. *See Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 788 (E.D. Pa. 2013) ("Malibu has satisfied its burden of proof with substantial evidence and deserves a large award.")

        B.  <u>A Report of Plaintiff's Litigation History Nationwide, in Michigan, and in Ohio</u>

Defendant's argument that Malibu Media has no intention to litigate is based largely on the Honorable Judge Hood's opinion in the Eastern District of Michigan wherein Plaintiff's cases were analyzed by the court and it concluded Plaintiff did not routinely serve defendants or proceed into litigation. *See* CM/ECF 8 at p. 3 citing *Malibu Media, LLC v. John Does 1-30*, 12-13312, 2013 WL 5476063 (E.D. Mich. Sept. 30, 2013).

Plaintiff respectfully suggests that its record nationally, in Michigan, and now in Ohio suggests otherwise. Below is a breakdown of Plaintiff's record of serving and litigating against defendants nationally, and specifically in Michigan.

1. National Number of Names Received and Defendants Served

| National | # Cases |
|---|---|
| Dismissed Hardship | 213 |
| Dismissed - Other | 182 |
| Settled with Counsel | 104 |
| Settled Pro Se | 8 |
| Pending Investigation | 65 |
| Investigating | 14 |
| Negotiating With Counsel | 5 |
| Negotiating Pro Se | 1 |
| Preparing to Serve | 43 |
| Served Without Answer | 239 |
| Served With Answer | 140 |
| **Total Defendant Identities** | **1014** |

Plaintiff has received 1014 names[1] nationwide from federal lawsuits where it has served a Rule 45 subpoena to determine the identity of the subscriber of an IP address infringing its movies. Plaintiff served 379 defendants. Of those served, 140 defendants answered Plaintiff's complaint.

2. Explanation of Defendants that have not been Served

In order to explain the position of each defendant in each of Plaintiff's cases, Plaintiff has categorized each dismissed defendant in one of nine ways: (1) Dismissed – hardship; (2) Dismissed – other; (3) Settled with Counsel; (4) Settled Pro Se; (5) Pending Investigation; (6) Investigating; (7) Negotiating with Counsel; (8) Negotiating Pro Se; (9) Preparing to Serve.

---

[1] To be clear, Plaintiff has filed suit against more defendants than listed in this analysis. However, some defendants chose to settle before their name is released. In other cases, the ISP cannot identify an IP address because of data retention issues. These statistics do not include those cases.

a.  Hardship

Hardship is when a defendant may be liable for the conduct, but has extenuating circumstances where Plaintiff does not wish to proceed against him or her. Examples are when a defendant has little or no assets, defendant has serious illness or has recently deceased, defendant is currently active duty US military, defendant is a charitable organization or school, etc.

b.  Dismissed - Other

The category titled "dismissed-other" is defined as when Plaintiff's evidence does not raise a strong presumption that the defendant is the infringer or some other extenuating circumstance causes Malibu to not pursue its case.  In order to determine whether the subscriber is the infringer, or if the infringer can be identified, after receiving the name of the subscriber from the ISP, Malibu conducts an investigation and considers such factors as (1) length of the infringement, i.e. how long it took place, when it began, when it ended, whether it took place during the day or night, and any other patterns; (2) location of the residence where the infringement occurred, i.e. whether it is in a remote location or with other dwellings within wireless access range; and (3) additional evidence.

Malibu's additional evidence is a comprehensive scan of a high percentage of all BitTorrent activity within the United States of America on all known pirated content owned by all worldwide content owners.  To put it simply, it is a list of all other BitTorrent content that is downloaded by a defendant in a lawsuit.  This includes music, mainstream movies, ebooks, computer programs, software, etc.  The evidence gleaned from this comprehensive scan is critical to determining the identity of the responsible party.  As an example, Malibu can compare a subscriber's Facebook page to its Additional Evidence list associated with the subscriber's IP address.  Oftentimes, a subscriber will publicly admit on social media to enjoying sports teams,

13

music groups, or favorite TV shows. Malibu will compare a defendant's likes and interests to its Additional Evidence and determine whether the interests match.

Malibu Media has adopted high standards prior to serving a Defendant and in some cases has determined to not pursue a case based on insufficient evidence. Examples of scenarios in which Malibu may dismiss based on insufficient evidence include: multiple roommates within one residence with similar profiles and interests share a single Internet connection; the defendant has left the country and cannot be located; the results of additional surveillance do not specifically match profile interests or occupation of defendant or other authorized users of the Internet connection; the subscriber is a small business with public Wi-Fi access, etc.

Further, this category includes defendants that have relocated out of the appropriate venue or forum, have claimed sovereign immunity, the infringement occurred by a minor, the process server was unable to serve, or other extenuating circumstances existed where Plaintiff determined it did not desire to pursue its claims against a particular party.

c. Pending Investigation / Investigating

As set forth above, these defendants are those that Malibu Media is currently investigating in order to determine whether to proceed.

d. Negotiating with Counsel / Negotiating Pro Se

This includes any defendants that are currently negotiating settlement with Malibu Media's counsel and are either represented by counsel or pro se.

e. Preparing to Serve

This category represents defendants where Malibu Media is currently requesting or has requested a summons and coordinating with a process server.

f.   Current National Malibu Media Litigation

The attached exhibit includes all cases in advanced litigation.  Malibu Media is currently facing 52 separate opposing counsel challenging Malibu Media in 71 different cases.  *See* Exhibit C.

3.   Report on Status of Defendants in Michigan

| Michigan | # Cases |
|---|---|
| Dismissed Hardship | 26 |
| Dismissed Other | 16 |
| Settled with Counsel | 9 |
| Settled Pro Se | 1 |
| Pending Investigation | 3 |
| Investigating | 2 |
| Negotiating With Counsel | 1 |
| Preparing to Serve | 2 |
| Served  Without Answer | 37 |
| Served With Answer | 27 |
| **Total Names** | **124** |

In Michigan, Malibu Media has received the identity of 124 defendants, and has served 64 of those defendants, or approximately 52%.  Numerous cases have proceeded well into discovery.  *See e.g. Malibu Media, LLC v. Pontello*, 13-CV-12197, 2014 WL 3528615 (E.D. Mich. July 16, 2014) (denying defendant's *motion in limine* to exclude expert witness and resolving discovery dispute); *Malibu Media, LLC v. House*, 13-12218, 2014 WL 861599 (E.D. Mich. Mar. 5, 2014) (granting leave to amend the complaint after depositions revealed the infringer was the subscriber's husband); *Malibu Media v. Doe*, 13-11432, 2014 WL 2616902 (E.D. Mich. June 12, 2014) (granting in part motion to strike defenses and adjudicating discovery

issues).  Plaintiff has even been awarded summary judgment.  *See Malibu Media v. Bui*, 1:13-cv-163 (W.D. Mich. July 21, 2014).

Above is a chart detailing in Michigan the outcome of cases in each category listed above nationwide in Malibu Media federal lawsuits against individual infringers.

    4.  <u>Report on Status of Defendants in Ohio</u>

| Status | # Cases |
|---|---|
| Dismissed Due to Hardship | 6 |
| Dismissed Due to Inability to Serve | 2 |
| Dismissed Due to Incarceration | 1 |
| Dismissed Due to Relocation | 1 |
| Failed Lookup | 6 |
| Investigating | 7 |
| Negotiating | 3 |
| Pending Discovery | 85 |
| Pending Investigation | 17 |
| Preparing to Serve | 10 |
| Settled | 25 |
| Unable to Identify Infringer | 8 |
| Served Pending Answer | 1 |
| **Total** | **172** |

Above is a chart detailing the status of every single Malibu Media cases in Ohio, including those cases where Plaintiff has yet to receive discovery from a defendant's internet service provider.  *See* Exhibit D.  Because Plaintiff only filed its first suit in Ohio in May, many of its cases have not progressed to same extent as in other districts.  Indeed, 85 cases currently fall into "pending discovery" – which is when Plaintiff has not yet received subpoena response from the Internet service provider with the defendant's identity.  Further, the category titled "unable to identify" refers to when Plaintiff received the name of the subscriber but was unable

to pinpoint the infringer.  "Failed lookup" refers to when an Internet service provider cannot identity a defendant because of data retention issues.

As set forth above, Plaintiff will litigate any of its claims where it believes it has a good faith basis to believe the infringer is liable and it should proceed against him.  Plaintiff does not shy away from serving defendants and is not afraid to enter into discovery, or even go to trial if necessary.  Plaintiff enters this litigation in good faith with a proper purpose – to stop the worst of the worst infringers from stealing its content daily, to deter others from infringing, and to seek compensation for its injury from infringement.

### C.  Four Real Examples of Why Plaintiff Needs Defendant's Identity

Plaintiff cannot proceed and serve Defendant without knowing his identity.  It is necessary for Plaintiff to investigate Defendant and determine whether its evidence correctly matches him, or is more appropriately suited against another party, or should not be pursued at all.  As an example, below are six examples from current Ohio cases where Plaintiff needed the identity of the defendant in order to determine whether to proceed.[2]

#### 1.  *Example A*

Subscriber recently married and his wife now lives in the residence. Additional surveillance captured transactions on files including music by the band Iron Maiden which is among the subscribers "favorite" bands as well as content relating to Marvel's Agents of Shield which is also an interest of the subscriber and not his spouse.  Claims are being pursued solely against the subscriber.

---

[2] Each one of these scenarios represents an actual case in this District.  Out of an abundance of caution and to preserve the Defendant's right to proceed anonymously or confidentially, Plaintiff has not included the case numbers.  That being said, should the Court request Plaintiff provide them, Plaintiff will do so.

### 2. *Example B*

Subscriber lives in an apartment complex. Investigation was done in order to rule out potential WiFi hacking. Subscriber expresses strong interest in firearms and gun rights. Additional surveillance includes files titled "Gun Digest Shooter's Guide to the AR-15" and "US Marine Corps Sniper Manual FMFM 1-3B".

### 3. *Example C*

Subscriber is female who shares an Internet connection with husband. Investigation eliminated the subscriber as a suspect but quantified her spouse's strong interest in the topic of the distribution of income in the United States. Additional surveillance captured files including one titled "The Divide - American Injustice in the Age of the Wealth Gap" indicating the spouse was the party using BitTorrent and the most likely party responsible for the infringements in this particular case.

### 4. *Example D*

Subscriber is female sharing the Internet account with her husband. Investigation eliminated the subscriber as a suspect by indicating her spouse is an instructor at a martial arts academy. Additional surveillance included files titled "Get Ripped Like Bruce Lee! Plus Exclusive Photos of Workouts & Wisdom" and "Close Range Combat Wing Chun Vol 2" quantifying that the husband was the party accessing content on BitTorrent. Claims are being pursued against the husband.

As set forth above, Plaintiff has a genuine need to know the identity of the Defendant prior to service in order to determine whether it is proceeding against the correct party. Plaintiff does not intend to embarrass nor force Defendant to settle. Further, Plaintiff will not object to Defendant proceeding anonymously so long as it may receive Defendant's identity. However,

18

without Defendant's identity, Plaintiff cannot evaluate the claims it is bringing and properly proceed with its case. Defendant's argument that Plaintiff has an improper purpose for bringing suit is meritless and his motion should be denied.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny the subject Motion.

DATED: September 12, 2014.

Respectfully submitted,

**YMF, INC.: The Law Office of Yousef M. Faroniya**

 /s/ *Yousef M. Faroniya*
Yousef M Faroniya
84 S. 4th St.
Columbus, Ohio 43215
Tel.: (614) 360-1855
Fax: (614) 859-5016
E-mail: yousef@ymfincorporated.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:    /s/ *Yousef M. Faroniya*
Yousef M Faroniya