## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

```
--------------------------------------------------------------X
                                                    :
MALIBU MEDIA, LLC,                                  :
                                                    :     Case No. 1:14-cv-00493-TSB
                         Plaintiff,                 :
                                                    :
            vs.                                     :
                                                    :
JOHN DOE SUBSCRIBER ASSIGNED                        :
IP ADDRESS 65.189.10.120                            :
                                                    :
                         Defendant.                 :
                                                    :
--------------------------------------------------------------X
```

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Malibu Media, LLC ("Plaintiff"), by and through undersigned counsel, expeditiously files its response in opposition to John Doe's ("Defendant") March 11, 2015 Motion to Dismiss [CM/ECF 23], and states as follows:

### I.    PERTINENT PROCEDURAL BACKGROUND

At issue is Plaintiff's allegation that Defendant continuously infringed thirty (30) of Plaintiff's copyrighted works over a ten-month period starting in July of 2013 and persisting through April of 2014.  Plaintiff collected its evidence and filed a complaint on June 13, 2014, requesting that Defendant delete and permanently remove, and be enjoined from continuing to infringe, Plaintiff's copyrighted works [CM/ECF 1].

Because Plaintiff was only able to identify Defendant by his Internet Protocol ("IP") address, this Court entered an order on June 16, 2014 allowing Plaintiff to serve a Rule 45 subpoena on the Defendant's internet service provider in order to identify Defendant [CM/ECF 4].  Defendant's attorney offered to accept service on behalf of Defendant on the condition that

1

Plaintiff agree to litigate in the dark, without knowing Defendant's identity.  Because the Federal Rules disfavor (if not outright prevent) such blind litigation, Plaintiff declined.  Plaintiff was thus obviously unable to effectuate service of process on Defendant until it learned of his identity and obtained a summons.  This process was delayed, however, because Defendant filed a motion to withhold disclosure of his identity and to quash the Rule 45 subpoena [CM/ECF 8].

Defendant's efforts to conceal his identity were not rejected until January 21, 2015, when the Court entered an order (i) extending the time within which Plaintiff had to amend its complaint and effectuate service until February 28, 2015 and (ii) directing Plaintiff to not publically identify Defendant until further order [CM/ECF 20].  Yet it was not until February 2, 2015 that Plaintiff finally first received Defendant's identity, and Plaintiff could not immediately effectuate service at that time, not only because it did not yet have an issued summons but because it still had to adequately carry out a due diligent investigation to ensure it had a good faith basis for proceeding.

By prioritizing this action above its other obligations and expediting its investigation, within just a couple weeks Plaintiff confirmed that Defendant indeed was responsible for infringing Plaintiff's 30 works.  Although ready to amend its complaint and effectuate service, Plaintiff was unsure how to proceed since a summons had not yet been issued in light of the Court's instruction not to identify Defendant.  Plaintiff accordingly filed a motion with the Court asking the Court to either (1) amend its protective order so that Plaintiff could identify Defendant in the summons and effectuate service or otherwise (2) grant Plaintiff leave to file its summons and affidavit under seal [CM/ECF 21].

On February 26, 2015, the Court granted the motion, but it did not extend the time for Plaintiff to effectuate service.  So although a summons was subsequently issued, Plaintiff had

only four days to effectuate service.[1]  Plaintiff reached out to Defendant's attorney to ascertain whether there would be any objection to a brief extension of time to facilitate service of process. Defendant's attorney did not respond and Plaintiff quickly filed a motion with the Court requesting a brief additional 30-day extension of time to complete service (which would still have given Plaintiff a mere fraction of the time to serve that is given to most plaintiffs) [CM/ECF 22].  This motion has not yet been ruled upon, but Plaintiff has since filed its amended complaint against Defendant [CM/ECF 24], and is ready, willing, and able to effectuate service.[2] Alternatively, and to the extent Defendant's attorney is representing that he is now willing to accept service on Defendant' behalf (notwithstanding the fact that Defendant's identity has been disclosed to Plaintiff), Plaintiff will certainly *immediately* effectuate service through Defendant's attorney, thereby mooting Defendant's motion in its entirety.

## II.  LEGAL MEMORANDUM

### A.  Defendant's motion is governed by Rule 12(b)(5).  Although Defendant fails to provide any applicable analysis, relief under Rule 12(b)(5) is entirely unwarranted.  Dismissing under Rule 12(b)(5) would not only reward Defendant's obstructionist tactics, but would deny Plaintiff its day in court, in violation of its Constitutional rights.

Defendant moves to dismiss this action for Plaintiff's failure to serve him within three weeks of discovering his identity.  Defendant requests dismissal pursuant to Rules 12(b)(5) and 41(b), but only the former rule applies; Rule 12(b)(5) deals with *pre-service* issues and concerns a plaintiff's failure to serve, while Rule 41(b) deals with *post-service* issues and is limited to a plaintiff's failure to *prosecute*.  *Accord Brown v. Mohr*, No. 2:13-cv-0006, 2015 WL 762813, *3

---

[1] The parties appear to be in agreement that because the Court's order contemplated service on a Saturday, Plaintiff effectively had two extra days, or until Monday 2, 2015, to serve.

[2] Plaintiff has suspended its service efforts per this Court's interim directive stating that "the Clerk is DIRECTED to withhold issuance of the summons…."

(S.D. Ohio Feb. 23, 2015) ("A Rule 12(b)(5) motion is the proper vehicle for challenging the failure to deliver a summons and complaint in accordance with Rule 4(m)"); *Schmidt v. Jefferson Cnty. Bd. of Educ.*, No. 3:13-cv-00694, 2014 WL 1877669 *1 (W.D. Ky. May 9, 2014) (same).

Although Defendant's motion cites Rule 12(b)(5), he does not meaningfully address same, and waives any argument thereunder. *See Meridia Prod. Liability Litigation v. Abbot. Labs.*, 447 F.3d 861, 868 (6th Cir. 2006). Although Defendant's entire motion must be rejected on this basis alone, the Court may otherwise note that Rule 12(b)(5) relief is an extraordinary and disfavored remedy since it is antagonistic to a plaintiff's constitutional right to have its day in court. In order to dismiss a complaint under Rule 12(b)(5) for failure to comply with Rule 4(m) or its extensions, the court must find that the plaintiff, *without good cause or justification*, failed to effectuate service. *See, e.g.*, *Greene v. Venatter*, No. 2:13-cv-00345, 2014 WL 559154 (S.D. Ohio Feb. 11, 2014). In this context, good cause is demonstrated by a showing of mere excusable neglect—anything beyond "half-hearted efforts to serve a defendant." *Stafford v. Franklin Cnty.*, No. 2:04-cv-178, 2005 WL 1523369, *3 (S.D. Ohio June 28, 2005); *see also Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005) ("Whether a case of neglect was excusable is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.").

Here, Defendant filed a motion to quash the Rule 45 subpoena and to conceal his identity, and his attorney only offered to accept service on Defendant's behalf if Plaintiff agreed to litigate blindly and stipulate to the motion to quash. It therefore goes without saying that Plaintiff had a good cause justification for its failure to effectuate service at any time prior to February 2, 2015, as it was not until that date that Plaintiff even learned Defendant's identity. *Cf. AF Holdings LLC v. Doe*, No. 2:12-cv-01063, 2012 WL 1898843, *3 (E.D. Cal. May 23, 2012) (noting that a

plaintiff cannot name and serve a doe defendant with process until it is able to ascertain his identity and conduct early investigations); *Saffron v. Wilson*, 70 F.R.D. 51, 56 (D.D.C. 1975) (refusing to dismiss defendants because plaintiff did not know their identities and thus had not had an adequate opportunity to engage in discovery).

And Plaintiff of course could not immediately serve Defendant upon learning his identity, as Plaintiff had to (1) carry out its due diligence and confirm a good faith basis to proceed so as to comply with Rule 11 and (2) obtain authorization and instruction from the Court on how to issue a subpoena (given the Court's protective order preventing disclosure of Defendant's identity). Plaintiff expeditiously investigated and requested Court authorization and instruction. Quite evidently, this is not one of the rarely-applicable cases for which the extraordinary relief of Rule 12(b)(5) is justified. This court's own precedent makes this point abundantly clear and suggests that the Court is actually without discretion to dismiss where, as here, Plaintiff has had effectively ***_less than 30 days_*** to not only perform a due diligence investigation, but to also draft and file its amended complaint, ascertain the procedure for serving Defendant in light of the Court's protective order, obtain the requisite subpoena, and then retain a process server to locate and effectuate service on Defendant, all while simultaneously complying with a multitude of other applicable deadlines in other cases. *Accord Mohr*, 2015 WL 762813 (refusing to dismiss under Rule 12(b)(5) even though plaintiff was given ***_over 600 days_*** to effectuate service); *Venatter*, 2014 WL 559154 (declining to dismiss under Rule 12(b)(5) even though plaintiff was given ***_over 300 days_*** to effectuate service, noting that this Court's authority, the plain language of the Rule, and the Supreme Court's interpretations encourage district courts to enlarge the time for service even if there is no good cause shown).

**B. Relief under Rule 41(b) is unavailable, and even if it were, Defendant's disingenuous arguments do not support dismissal**

Rule 41(b) is inapplicable at this pre-service stage of the litigation; rather than Rule 41(b), Rule 15(b)(5) "is the proper vehicle for challenging the failure to deliver a summons and complaint." *Mohr*, 2015 WL 762813 at *3; *see also Schmidt*, 2014 WL 1877669 at *1. Even if it were otherwise, application of Rule 41(b) here is inappropriate. As Defendant aptly notes, district courts must be reluctant to order dismissal pursuant to Rule 41(b) and should do so only when fundamentally necessary to address a litigant's repeated contumacious conduct. *See Richter v. Am. Aggregates Corp.*, 522 Fed. Appx. 253, 260 (6th Cir. 2013) ("[D]ismissal for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff"); *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (same). Four factors guide the analysis: "(1) whether the party's failure is due to willfulness, bad, faith or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Richter*, 522 Fed. Appx. at 259. As noted below, <u>none</u> of these considerations are at issue, and a Rule 41(b) would clearly be uncalled for.

*Plaintiff's failure to serve has not been willful*. The first factor in the Rule 41(b) analysis asks whether Plaintiff's failure to prosecute is due to willfulness, bad faith, or fault. Were this Court to apply the Rule 41(b) analysis to the at-issue circumstances, the question would necessarily be whether Plaintiff's failure to serve Defendant was willful and in bad faith. The obvious and resounding answer to that question is no. Incredulously, Defendant disagrees and insists that Plaintiff has "willfully failed to prosecute this litigation by failing to serve the Defendant on two separate occasions … this litigation flows from the dilatory and obstructive

6

actions of the Plaintiff, rather than being the responsibility of the Defendant."  Yet Defendant does not make <u>any</u> argument whatsoever as to how Plaintiff has engaged in *any* dilatory or obstructive conduct with regard to the original Rule 4(m) deadline or the Court's initial extension thereof.  Plaintiff was *physically incapable* of complying with those deadlines because Plaintiff did not even know Defendant's identity.  *See, e.g.*, *AF Holdings*, 2012 WL 1898843 at *3.  As a matter of law, then, Plaintiff's noncompliance cannot be deemed dilatory, obstructionist, or wilfull.  *Accord Bryant v. U.S., ex. Rel. U.S. Postal Service*, 166 Fed. Appx. 207, 210–11 (6th Cir. 2006) (inability excuses a party's noncompliance with an order); *U.S. v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) (a party's inability to comply with an order cannot be deemed willful).

What is left, then, is Defendant's unsupported and absurd contention that Plaintiff has somehow engaged in willful and contumacious conduct by not effectuating service within less than 30 days of finally discovering Defendant's identity.  Stated differently, Defendant's contention is that even though Plaintiff acted with haste and prioritized its obligations and investigative efforts in this case, its ultimate failure to successfully effectuate service in less than 25% of the time available to virtually all other plaintiffs amounts to the sort of conduct that warrants dismissal with prejudice.  Defendant does not cite to <u>any</u> analogous authority for this proposition, and instead attempts to fault Plaintiff for (1) attempting to confer with Defendant's attorney via email rather than telephone and (2) waiting until the service date to request an additional extension of time.

These attacks are disingenuous and unjustified.  The Court's Rule 4(m) extension directed Plaintiff to effectuate service on February 28, 2015 (a Saturday), making Plaintiff's obligations due the next business day—Monday, March 2, 2015.  Defendant does not dispute this point, but claims that it was inappropriate for Plaintiff to wait until Friday, February 27, 2015 to

request an extension of time. Defendant does not identify <u>any</u> authority to show (1) that a litigant's attempt to confer even a day in advance of a deadline is tantamount to willful and dilatory misconduct or (2) that a litigant must attempt to confer telephonically rather than via email. These unsupported implications are erroneous—the local rule does not apply any such limitations on conferrals. *Accord* L.R. 7.3.

Although largely irrelevant to the analysis, undersigned notes that he has experienced issues with Defendant's attorney in this and other cases concerning telephonic miscommunications. To avoid any intentional or inadvertent miscommunication, undersigned has made it a point to confer with Defendant's attorney only in writing to avoid repeated miscommunications.[3] Although Defendant's attorney is aware of this, he continues to badger undersigned to communicate telephonically, and habitually delays in responding to emails. Consistent therewith, Defendant's attorney did not respond to undersigned's attempted conferral at any time before Plaintiff's service deadline, and that is why Plaintiff was forced to file its Rule 4(m) motion without a sufficient conferral on Monday, March 2, 2015, the day it was to effectuate service. In other words, Plaintiff delayed filing its motion because it was awaiting a response from Defendant's attorney, and when none came, Plaintiff filed its motion stating that a conferral had been attempted three days prior but that Defendant's attorney had not yet responded. All this factual background aside, the point remains that Defendant fails to articulate <u>*any*</u> basis for finding that Plaintiff has engaged in willfulness, bad faith, or fault with regard to its

---

[3] In the past, Defendant's attorney has (either intentionally or inadvertently) misconstrued the substance of telephone conversations and taken inconsistent positions, retracting his agreements and making misrepresentations. He has also been unnecessarily hostile—in a recent telephone conversation, Defendant's counsel threatened undersigned: "I can't wait to come down there and ***end your life***," and then he hung up. Undersigned has taken precautionary measures to avoid having to deal with Defendant's attorney's unethical gamesmanship, and thus did not attempt to confer with Defendant's attorney telephonically and resorted to email.

service-of-process obligations.  He cites to no applicable authority, and the prevailing case law is abundantly clear that the at-issue circumstances do <u>not</u> warrant such a finding.

***Defendant has not been prejudiced by a lack of service.***  The second factor in the Rule 41(b) analysis asks whether Defendant has been prejudiced by Plaintiff's failure to prosecute (*i.e.*, whether Defendant has been prejudiced by not having been served within the past 30 days, notwithstanding the fact that he has had notice of this lawsuit for nearly a year, has withheld his identity throughout that time period, and has delayed the proceedings by filing meritless motions designed to avoid dealing with the merits of this case).  Again, the answer is of course no.

Defendant incoherently urges otherwise by claiming that he has "incurred expenses defending a matter which Plaintiff apparently had no intention of litigating."  Plaintiff is unaware of what defense fees Defendant refers to, and presumes he is referring to his various efforts to withhold his identity and deny Plaintiff its day in court.  Those fees, obviously, were incurred because Defendant's attorney employed an overly aggressive defense strategy to avoid addressing the merits of this case; they have nothing to do with, and have not been caused by, Plaintiff.  From day one, Plaintiff has merely fought to litigate this case on the merits against Defendant, an individual who infringed thirty (30) of Plaintiff's works for nearly a year.  Defendant's outrageous suggestion that Plaintiff has no intention of litigating is thus patently false and unsupportable.  Were that the case, Plaintiff would not have pushed the case thus far and would not have aggressively defended against Defendant's obstructionist motions.

Up until one month ago, Plaintiff had been put on the "defensive," its being constantly forced to defend against Defendant's continuing efforts to conceal his identity and avoid having the case addressed on the merits.  It was only one month ago that the tables were turned and Plaintiff finally learned Defendant's identity, corroborated its claims, and requested instruction

from the Court on how to adequately serve Defendant consistent with the protective order so that Plaintiff could finally have its day in court.  And Defendant now has the audacity to claim that Plaintiff should *still* be foreclosed from litigating its claims because its failure to serve Defendant within a matter of weeks has somehow prejudiced him.  Predictably, Defendant wholly fails to identify <u>any</u> applicable authority to support this absurd claim.  Plainly, the "prejudice" that Defendant has forced Plaintiff to endure for the preceding 10 months far outweighs and nullifies any purported "prejudice" that Defendant has endured in the past few weeks by any technical noncompliance with the rules regarding service of process.

**Plaintiff has not been notified that its failure to accomplish expedited service could lead to a dismissal with prejudice**.  The third factor in the Rule 41(b) analysis considers whether Plaintiff has been previously warned that its failure to prosecute could lead to dismissal. Defendant makes virtually no argument on this point, other than to erroneously state that the Court has previously found Plaintiff dilatory for not serving Defendant.  This is false.  What the Court found was that Plaintiff had a good faith basis for not effectuating service, but could have more expeditiously requested an extension of time to serve.  *See* CM/ECF 20.  The Court has certainly not advised Plaintiff that its failure to serve Defendant within a matter of weeks would risk a dismissal with prejudice.  This factor, like the others, weighs in Plaintiff's favor.

**No sanctions are warranted**.  The final factor in the Rule 41(b) analysis asks the Court to consider whether dismissal is necessary or whether a lesser sanction might be appropriate.  To this point, Defendant's attorney requests that the Court grant Defendant fees "to compensate for the expenses incurred and time wasted."  The irony should be readily apparent, as it is Defendant and Defendant's attorney who have forced Plaintiff and its attorney to needlessly waste time and incur significant and unnecessary expenses.  Perhaps aware of this reality, Defendant's attorney

10

makes no effort whatsoever to identify what expenses he has incurred or what time he has wasted.  To date, this litigation has consisted entirely and exclusively of Defendant's own obstructionist tactics of delaying litigation and avoiding having Plaintiff's claims addressed on the merits.  Again, it was Defendant's decision to adopt an aggressive defense strategy in this case; not Plaintiff's.  If anyone should be requesting fees, it is Plaintiff.

Rather than providing any basis or support for his ridiculous fee request, Defendant summarily insists that "dismissal with prejudice is not an unfair consequence of Plaintiff's failures to serve the Defendant within either the initial 120-day period or the 38-day extension." The Court must note Defendant's disingenuity; as noted, Defendant's filing of a motion to quash made it *physically impossible* for Plaintiff to comply with these deadlines.  Defendant's argument, therefore, is that a defendant should be entitled to avoid having to face liability for a wrong by making it physically impossible for the plaintiff to effectuate service of process.  There is obviously no support for this ludicrous argument, and were the Court to adopt such a ruling it would frustrate the entire purpose of our judicial system.  Respectfully, it is due time for Plaintiff to finally have its day in court.

WHEREFORE, Plaintiff respectfully requests that the Court enter an order denying Defendant's unsupported and unsupportable Motion to Dismiss, and grating to Plaintiff any additional and further relief that the Court deems just and equitable under the circumstances.

Respectfully submitted,

**YMF, INC.: The Law Office of Yousef M. Faroniya**

 */s/ Yousef M. Faroniya*
Yousef M Faroniya
84 S. 4th St.
Columbus, Ohio 43215
Tel.: (614) 360-1855
Fax: (614) 859-5016

E-mail: yousef@ymfincorporated.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

*/s/ Yousef M. Faroniya*