# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| _____ | ) | |
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:14-cv-00493-TSB |
| v. | ) | |
| | ) | |
| John Doe subscriber assigned IP address | ) | |
| 65.189.10.120, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND/OR THE COURT'S INHERENT AUTHORITY

Although jurisdiction to pass on the merits of an action is lost once a notice of dismissal has been filed, the Court retains the power to resolve certain collateral issues even after the case is no longer pending. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990).

A Rule 41(a)(l)(A)(i) dismissal [Doc. 36], therefore, does not deprive this Court of jurisdiction to consider or impose sanctions for pre-dismissal conduct. *Id.* at 396 (the imposition of costs, attorney's fees, or contempt sanctions "is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated"). *See also Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater,* 465 F.3d 642, 645 (6th Cir. 2006) (discussing *Cooter & Gell* and the ability of a district court to impose sanctions under 28 U.S.C. § 1927 when an action has been dismissed under Rule 41(a)); *River City Capital, L.P. v. Bd. of County Comm'rs, Clermont Cnty., Ohio,* 491 F.3d 301, 310 (6th Cir. 2007). ("Just because a federal court is later found to lack subject matter jurisdiction in a particular matter does not give litigants a free pass with respect to any and all prior indiscretions they may have committed before the court.").

Plaintiff Malibu Media's voluntary dismissal abandoned its claims against the John Doe Defendant, confirming Defendant's contention that the entire action had been little but pretext to coerce a settlement. Defendant respectfully and timely[1] submits this motion, pursuant to 28 U.S.C. §

---

[1] *See e.g. In re Ruben*, 825 F.2d 977, 981-82 (6th Cir. 1987) (finding motion for § 1927 fees filed four months after judgment timely under "reasonableness" test); *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997) (affirming § 1927 fees awarded on motion filed one month after judgment) (*citing In re Ruben*).

1927 and the Court's inherent authority, for an order requiring counsel for Plaintiff Malibu Media, specifically Yousef Faroniya, to satisfy personally the excess attorney's fees Defendant reasonably incurred because of his unreasonable and vexatious multiplication of the proceedings in this case.

## I. RELEVANT FACTS & PROCEDURAL HISTORY

On June 13, 2014, Mr. Faroniya, on behalf of Malibu Media, filed a complaint against the Defendant, identified only by his Internet Protocol address ("IP address"). *See* Doc. 1. The complaint alleged that the Internet subscriber assigned the IP address 65.189.10.120 used the BitTorrent file distribution network to infringe thirty (30) of Malibu Media's copyrighted works. *Id.*

**A.  Thinly-Veiled Threats of Production.**

Included in Malibu Media's complaint were several paragraphs referencing additional evidence of third-party copyright infringements and "thinly-veiled threats of its production." *See* Doc. 1 ¶¶ 25-28; Doc. 20 pp. 13-15.

These paragraphs were included despite Malibu Media's attorneys previously being sanctioned in other district courts for a similar practice. *See* Doc. 20 pp. 13-15. The offending paragraphs were struck by the Court *sua sponte* from Malibu Media's complaint. *Id.*[2]

**B.  No Intent to Litigate.**

On July 31, 2014, undersigned contacted Mr. Faroniya, identifying himself as representing the Defendant, inquiring about settlement options, and notifying him that he was authorized to accept service of behalf of the Defendant.[3] *See e.g.* Doc. 8 p. 5; Doc. 11 pp. 1, 3, & 4.

On August 22, 2014, Defendant filed a motion to quash wherein Defendant questioned Malibu Media's intent to litigate given its well-documented history and flaws within its case. *See* Doc. 8 pp. 3-4 (collecting cases); Doc. 11 p. 4; and Doc. 23 p. 7.

---

[2] Even now, Mr. Faroniya continues to push the spectre of Exhibit C's "additional evidence" upon the Court. *See* Doc. 1 ¶¶ 25-28 *cf. Malibu Media v. John Doe subscriber assigned IP address: 174.101.246.127*, No. 15-cv-00305-TSB, ECF No. 1 ¶ 28 (S.D. Ohio May 11, 2015) ("Plaintiff's evidence establishes that Defendant is a habitual and persistent BitTorrent user and copyright infringer."). This behavior underscores the fact that absent substantive sanctions, Malibu Media and its counsel will continue its questionable practices unfettered by the Court's orders. *See e.g. Malibu Media v. Ramsey*, No. 14-cv-00718-TSB, ECF No. 15 p. 12 (S.D. Ohio May 26, 2015) ("[T]his Court has borne witness to the fact that Malibu Media has simply evolved this practice rather than eradicate it.").

[3] Mr. Faroniya later sought to blame the undersigned for his failure to timely serve the Defendant, arguing "Plaintiff has not contributed to this delay in anyway. Defense counsel claims it will accept service, but has not provided any proof or evidence that it even represents the proper defendant in this case." *See* Doc. 17 p. 2. Any concern Plaintiff may have had that undersigned represented "the proper defendant" was absent as long as it thought a monetary settlement was at hand. *See* Doc. 8-1 (emails between counsel regarding settlement options).

Briefing on Defendant's motion to quash, which Mr. Faroniya opposed, was completed on October 9, 2014. In its opposition Mr. Faroniya asserted "Defendant's argument that Plaintiff lacks any intention to litigate is misinformed and without merit." *See* Doc. 9 p.10. *See also* Doc. 14 p. 6; Doc. 28 p. 9.

The deadline for Mr. Faroniya to serve the Defendant was October 11, 2014.

On October 13, 2014, two days after the deadline passed, Mr. Faroniya filed the first motion for an extension of time to complete service, requesting an additional 30 days. *See* Doc. 15.

On January 21, 2015, the Court denied Defendant's motion to quash. *See* Doc. 20. Mr. Faroniya was given until February 28, a period of thirty-eight (38) days, in which to complete service. *Id.* at 15. Additionally, the Court directed Mr. Faroniya to file the summons and its return under seal if they disclosed the Defendant's name and identifying information. *Id.*

Despite the impending February 28 deadline, Mr. Faroniya waited twelve (12) days before notifying Time Warner of the Court's order denying the quash on February 2, 2015. *See* Doc. 28. Mr. Faroniya received Defendant's identity that same day. *Id.* at 2.

Mr. Faroniya spent the remaining twenty-six (26) days to "carry out a due diligent [*sic*] investigation" to ensure that Malibu Media had a good faith basis to proceed against Defendant. *Id.*

On February 25, 2015, Mr. Faroniya filed a motion for leave to file its proposed summons and its return under seal, but did not request an extension of time to complete service of process. *See* Doc. 33 p.3. As the Court noted "Malibu Media does not explain why it sought leave to file these documents under seal when the Court previously ordered the same. (Doc. 20 at 15)." *Id.* at n.1. The Court granted the motion the next day and reaffirmed that February 28, 2015 remained as the deadline for Malibu Media to complete service of process. *See* Doc. 20 p. 15.

**C. Second Extension for Time to Serve.**

On Friday, February 27, 2015 at 6:31 p.m., Mr. Faroniya emailed the undersigned requesting consent to a second motion for extension of time to complete service of process. *See* Doc. 23-2.

On Monday, March 2, 2015, two days after the deadline to serve—Mr. Faroniya filed a second motion for extension of time, requesting an additional 30 days. *See* Doc. 22.

On March 11, 2015, Defendant filed an opposition to Malibu Media's second motion for an extension of time and a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) and 41. *See* Doc. 23.

**D.  Order to Show Cause.**

On Friday, March 13, 2015 at approximately 8:00 p.m., Mr. Faroniya filed an amended complaint, proposed summons, and Reference List. *See* Docs. 24, 25. The amended complaint was publicly filed and referred to Defendant only as John Doe, in compliance with the February 26, 2015 Notation Order. *See* Doc. 24. However, the proposed summons and Reference List were also publicly filed and listed Defendant's name and address. *See* Docs. 24-3 & 25.

On March 15, 2015, Defendant filed a motion for an order to show cause. *See* Doc. 26. The Court concluded that Defendant had established a *prima facie* case that Malibu Media and Mr. Faroniya had violated a definite and specific order of the court and ordered them to show cause in writing why they should not be sanctioned or held in contempt. *See* Doc. 27.

On March 20, 2015, Mr. Faroniya responded to the Order to Show Cause. *See* Doc. 29. The response included an attached email that revealed "persons at the law firm of Lipscomb, Eisenberg & Baker drafted the amended complaint and Reference List for Mr. Faroniya to file." *See* Doc. 33 n.5.[4]

**E.  Plaintiff's Voluntary Dismissal.**

On May 26, 2015, the Court granted Plaintiff's second motion for an extension of time to serve the complaint. *See* Doc. 33. Malibu Media was ordered to complete service within seven days after the issuance of the summons—June 2, 2015. *Id.* at p. 12.

On May 27 at 7:45PM, Plaintiff's counsel emailed Defendant inquiring if he would "waive personal service via a process server on you and instead accept service via email." *See* Ex. A. Undersigned has been authorized to accept service on behalf of the Defendant at all times. *See e.g.* Doc. 8 p. 5.

On May 28, 2015, undersigned filed a waiver of service to minimize costs for the parties; and because of Mr. Faroniya's confusion regarding the best method of service. *See* Ex. A.

On June 12, 2015, two weeks after service was effectuated, Mr. Faroniya voluntarily dismissed the claims against the Defendant without prejudice. *See* Doc. 36.

---

[4] *See also, Malibu Media v. Ricupero*, No. 14-cv-00821, ECF No. 53 pp.9-10 (S.D. Ohio April 19, 2015) (Veritext, the reporting service Malibu Media uses for its depositions, is located at the same address as Lipscomb, Eisenberg & Baker (hereinafter "Lipscomb"). Veritext identified Jazmin Viera of Lipscomb as the individual who set and canceled the deposition dates in that matter.).

## II. LEGAL STANDARDS

The ability to issue sanctions "empower[s] the court to command obedience to the judiciary and to deter and punish those who abuse the judicial process. Thus, a court's jurisdiction to issue sanctions under 28 U.S.C. § 1927 or pursuant to a court's inherent authority is ever present." *Red Carpet,* 465 F.3d at 645.

### A. Sanctions under 28 U.S.C. § 1927.

Pursuant to 28 U.S.C. § 1927:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Sanctions issued under § 1927, and under the Court's inherent authority, "empower the court to command obedience to the judiciary and to deter and punish those who abuse the judicial process." *Red Carpet,* 465 F.3d at 645; *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 644 (6th Cir. 2009); *Rentz v. Dynasty Apparel Industries, Inc*., 556 F.3d 389, 400 (6th Cir. 2009). Bad faith is not required to support a sanction under § 1927. *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986) (a court already has authority pursuant to its inherent authority to sanction bad faith conduct, and § 1927 would add nothing if it too required a showing of bad faith); *Dixon v. Clem*, 492 F.3d 665, 679 (6th Cir. 2007) ("To be sure, a finding of bad faith is not a necessary precondition … to a determination of § 1927 sanctionability."); *Wilson-Simmons v. Lake County Sheriff's Dep't*., 207 F. 3d 818, 824 (6th Cir. 2000) ("Bad faith is not required to support a sanction under § 1927.").

It is not a defense that another attorney filed the lawsuit or drafted the pleadings. Both the attorney filing the lawsuit and the attorney managing the lawsuit may be subject to sanctions.

*Rathbun v. Warren City Sch.,* 825 F.2d 977, 987 (6th Cir. 1987).[5] When determining whether an attorney pursued frivolous litigation, the Court should look not only at the adequacy of the pre-filing investigation, but also "whether [the attorney] continued to pursue the case in bad faith after some discrete moment in history" when it became apparent that the claim had no basis. *Id.*

**B.  Sanctions under the Court's Inherent Authority.**

Federal courts also have inherent authority to sanction litigants independent of any statute or court rule. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511-512 (6th Cir. 2002) (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)).

The Sixth Circuit applies a three-prong test to determine whether a district court may properly impose sanctions. "In order to award attorney fees under this bad faith exception, a district court must find [1] that 'the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment.'" *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (*quoting Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1375 (6th Cir. 1987)).

In *Chambers*, the Supreme Court suggested that a court could find that "fraud has been practiced upon it, or that the very temple of justice has been defiled" by actions such as a party "delaying or disrupting the litigation or by hampering the enforcement of a court order." *Chambers*, 501 U.S. at 46. Sanctions, therefore, are appropriate even in the absence of a specific finding of bad faith, where the conduct itself is tantamount to bad faith.[6] *First Bank*, 307 F.3d at 519 (citations

---

[5] The practice of law is not limited to appearances in court. It also embraces the preparation of papers that are to be filed in court on another's behalf and that are otherwise incident to a lawsuit. *Cleveland Bar Assn. v. Misch* (1998), 82 Ohio St.3d 256, 259, 695 N.E.2d 244; *Land Title Abstract & Trust Co. v. Dworken* (1934), 129 Ohio St. 23, 28, 193 N.E. 650. *See also Disciplinary Counsel v. Pavlik* (2000), 89 Ohio St.3d 458, 2000 Ohio 219. (Ohio attorney violated DR 3-101(A) by assisting an out-of-state attorney in the unauthorized practice of law); *Columbus Bar Assn. v. Thomas (2005),* 109 Ohio St.3d 89, 2006 Ohio 1930 (same).

In the present case, there is little dispute that 1) that persons at the law firm of Lipscomb drafted pleadings for Mr. Faroniya to file; 2) Lipscomb directs Mr. Faroniya's actions in the litigation; and 3) no lawyer from Lipscomb is admitted to practice in the Southern District of Ohio. Nor is it the practice of Lipscomb's lawyers to seek admission on a *pro hac vice* basis in cases filed in this District. *See e.g. Malibu Media v. Ramsey*, No. 14-cv-00718-TSB, ECF No. 15 p. 16 (S.D. Ohio May 26, 2015) ("Here, and in the dozens of other actions before the Court, there is ample evidence that Malibu Media or its "outside general counsel," rather than its local counsel of record, selects the litigation strategy and tactics.").

[6] *First Bank*, 307 F.3d at n.15 ("This Court has likewise used 'improper purpose' and 'bad faith' interchangeably.") (*citing Chambers*, 501 U.S. at 46 n.10 ("[T]he bad-faith exception resembles the third prong of Rule 11's certification requirement, which mandates that a signer of a paper filed with the court warrant that the paper 'is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'")).

omitted). If a lawsuit is filed to force a party to settle a claim rather than to try to prevail on the merits of the claim, the lawsuit's purpose is improper. *Id.* at 524-525. *See also Mitan v. Int'l Fidelity Ins. Co.*, 23 Fed. App'x. 292, 294-95, 298-99 (6th Cir. 2001).

## III. ARGUMENT

Certainly, copyright infringement is a legitimate basis for suit, and if someone engages in copyright infringement, that person may be sued. Yet, however understandable Plaintiff's concern that its copyrights are being infringed may be, many aspects of its attorney's advocacy are not. Malibu Media and Mr. Faroniya's litigation history in similar matters betrayed any good faith intention ever existed to litigate this matter or refrain from duplicative and unwarranted motions. Herein, opposing counsel employed tactics calculated to embarrass and coerce a settlement from the Defendant without any intention of taking the case to trial. The impropriety of Mr. Faroniya's tactics in this action is best viewed in context of his and Malibu Media's unorthodox approach to other litigation. Some instances have been well-briefed (*i.e.* the coercive nature of paragraphs 25-28 of the complaint; revealing his identity in contradiction to two court orders; and misrepresenting the Bellweather trial) and others are best left as footnotes.[7]

**A. Defendant Incurred Costs and Attorney's Fees Defending a Matter Mr. Faroniya Never Intended to Litigate.**

Taken alone, the present record may not evidence bad faith on the part of Mr. Faroniya, but such a showing is not prerequisite to an award of sanctions under § 1927. *Red Carpet*, 465 F.3d at 646. More so, the identified pleading excesses, missed deadlines,[8] belated extension requests and numerous misstatements of fact can hardly be attributed to mere negligence or incompetence. *See id.*

---

[7] *See e.g.* Doc. 28 p.8 n.3 (alleging "[i]n the past, Defendant's attorney has … misconstrued the substance of telephone conversations and taken inconsistent positions, retracting his agreements and making misrepresentations."); *cf.* Undersigned has only ever had two matters involving either Malibu Media or Mr. Faroniya. This was the first. Doc. 8 p. 3 ("From the outset, Malibu Media's counsel refused to speak via the phone, requiring communication via email."); *Malibu Media v. John Doe*, No. 13-cv-06312, ECF No. 94-1 (N.D. Ill. June 11, 2014) (a 15-page missive identifying the defendant's counsel therein as a "key member" of a "fanatical Internet hate group" that "threatened to kill plaintiff's principal and an attorney.").

[8] Viewed in isolation, Mr. Faroniya's first requested extension to complete service, would appear based on proper procedure. A review of the entire course of the litigation and comparison with his filings in other matters, however, shows a pattern of neglect which cannot characterize as excusable. Mr. Faroniya has repeatedly demonstrated a callous disregard for his responsibility to meet the time deadlines imposed by this Court's rules and orders. *See e.g.* Doc. 23 p. 5 (collecting Mr. Faroniya's repeated requests for extensions to serve). *Cf. Julien v. Zeringue*, 864 F.2d 1572, 1575-76 (Fed. Cir. 1989) (imposing § 1927 sanctions on appeal against an attorney who, among other things, had "continually missed deadlines" and "requested at least 10 extensions of time to file his briefs"); *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1218, 1226 (10th Cir. Kan. 2006) ("We have no difficulty deciding that Gage's numerous and predominantly untimely requests for extensions of time met this standard [for § 1927 sanctions.]).

Rather, when viewed in context they reflect the sort of shrewd but reckless lawyering that courts must be vigilant to admonish, correct, and deter through sanctions.[9] *Followell v. Mills*, 317 Fed. App'x. 501, 513 (6th Cir. 2009) (citations omitted); *Breaking Glass Pictures v. Does*, No. 13-cv-00804, 2013 U.S. Dist. Lexis 143839, *16 (N.D. Ohio Sept. 3, 2013) ("[T]here are signs that Plaintiff's counsel [Yousef Faroniya] is engaging in the kind of 'litigation abuses' that the *Malibu Media LLC* decision expressed concerns about … while not being serious about proving its claims."); *Malibu Media v. Ramsey,* No. 14-cv-00718-TSB, ECF No. 15 p. 4 (S.D. Ohio May 26, 2015) ("The Court does not view Malibu Media's conduct in this action in isolation. Rather, the Court views it as part of an unmistakable pattern that has emerged in other actions before this Court and in context of observations made by multiple other federal judges in cases involving Malibu Media.").[10]

Herein, the Defendant incurred expenses over the past year defending a matter which Mr. Faroniya never had any intention of litigating. Throughout, Defendant consistently questioned Mr. Faroniya's resolve to litigate given Malibu Media's established strategy of drawing out litigation through various extensions to coerce a settlement before voluntarily dismissing to avoid an adverse resolution on the merits. *See e.g.* Doc. 8 pp. 3-4 (collecting cases).

> Malibu's corporate strategy relies on aggressively suing for infringement and obtaining accelerated discovery of the IP address holder's identity from the ISP. It then seeks quick, out-of-court settlements which, because they are hidden, raise serious questions about misuse of court procedure.

*Malibu Media v. John Doe subscriber assigned IP address 66.108.67.10*, No. 15-cv-04369-AKH, ECF No. 10 p. 7 (S.D.N.Y. July 6, 2015). "In fact, most cases are voluntarily dismissed by Malibu Media pursuant to Rule 41(a)(1)(A)(i) without obtaining a summons, but presumably after Malibu Media has used the third-party subpoena to obtain a settlement." *Ramsey*, No. 14-cv-00718-TSB, ECF No. 15 p. 5 (S.D. Ohio May 26, 2015). "In the more than 60 Malibu Media cases before this Court, Malibu Media has not shown any indication that it intends to prosecute the merits of its

---

[9] These filings were neither Malibu Media's nor Mr. Faroniya's first trip to the courtroom. Malibu Media itself has filed scores of identical cases across the country, over 4,200 to date. In the Sixth Circuit alone, Mr. Faroniya, a sole practitioner with no staff, has filed over 400 cases on behalf of the Malibu Media in Ohio. None have gone to trial, the majority instead following a pattern of repeated extensions before being voluntarily dismissed.

[10] *See e.g.* Doc. 23 p. 5 (collecting Mr. Faroniya's repeated requests for extensions to serve); Doc. 26 p. 4 (collecting "inadvertent" identity disclosures by Malibu Media against defendants who refuse to settle); and *Ricupero*, No. 14-cv-00821, ECF No. 30-1 pp. 2-3 (S.D. Ohio March 19, 2015) (collecting Malibu Media's repeated requests for extensions to file expert reports).

copyright infringement claims." *See e.g. Malibu Media v. Downs*, No. 14-cv-00707-TSB, ECF No. 17 p. 17 (S.D. Ohio May 26, 2015).

From the beginning, Mr. Faroniya characterized Defendant as among the "worst of the worst infringers" of Malibu Media's copyrights. *See* Doc. 9 pp. 5 & 17; Doc. 14 p. 3. Indeed, Mr. Faroniya represented to the Court "Defendant's argument that Plaintiff lacks any intention to litigate is misinformed and without merit." *See* Doc. 9 p.10; *id.* p. 17. ("Plaintiff enters this litigation in good faith with a proper purpose."). To that effect, Mr. Faroniya continued filing briefs for the past year asserting Defendant's guilt; asserting Malibu Media's intention to prosecute its claims; and opposing Defendant's motions to quash and dismiss. Mr. Faroniya even went so far as to state "in every case, before serving the subscriber, Plaintiff determines whether it has a good faith basis to do so." *See* Doc. 14 p.4. A sentiment Mr. Faroniya again echoed when the results of his "due diligent [*sic*] investigation" [Doc. 28 p. 2], confirmed "that Defendant indeed was responsible for infringing Plaintiff's 30 works." *Id.*

> From day one, Plaintiff has merely fought to litigate this case on the merits against Defendant, an individual who infringed thirty (30) of Plaintiff's works for nearly a year. Defendant's outrageous suggestion that Plaintiff has no intention of litigating is thus patently false and unsupportable. Were that the case, Plaintiff would not have pushed the case thus far and would not have aggressively defended against Defendant's obstructionist motions.

*See* Doc. 28 p.9

Yet, two weeks after serving the Defendant—one of the worst infringers of Malibu Media's content, whom Mr. Faroniya has confirmed is undeniably guilty, and in a matter wherein a year's worth of time and fees pursuing the litigation has accrued—Mr. Faroniya voluntarily dismissed the claims without explanation.[11]

Mr. Faroniya's voluntary dismissal unequivocally established the untruth of Malibu Media's allegations against the Defendant. More so, it further reinforced the consensus held by numerous courts that Malibu Media never had a genuine interest in proceeding against the Defendant. Instead this action was a deliberate attempt to coerce a settlement from the Defendant by causing him to expend time and money on a meaningless goose-chase of a case. *See e.g. Malibu Media, LLC v.*

---

[11] *Cf.* Doc. 14 p.6 ("If the Court has concerns that Plaintiff does not intend to litigate, Plaintiff welcomes the opportunity to provide the Court with a full status report and explanation as to its choice to proceed against Defendant, proceed against another individual in Defendant's household, or not proceed, after it receives Defendant's identity.").

*Does*, 923 F.Supp.2d 1339, 1345-46 (M.D. Fla. 2013). Where "the attorney's behavior has been repeated or singularly egregious," for example where the attorney "'repeatedly took actions which required [the defendant] to expend unnecessary time and money, even though he had no intention of pursuing this litigation.'" § 1927 sanctions are appropriate. *United States v. Wallace*, 964 F.2d 1214, 1220-21 (D.C. Cir. 1992); *Oakstone Cmty. Sch. v. Williams*, No. 14-3742, 2015 U.S. App. LEXIS 10143, *9-11 (6th Cir. 2015); *In re TCI, Ltd*., 769 F.2d 441, 446 (7th Cir. 1985) ("Suits are easy to file and hard to defend. Litigation gives lawyers opportunities to impose on their adversaries costs much greater than they impose on their own clients. The greater the disparity, the more litigation becomes a predatory instrument rather than a method of resolving honest disputes.").

### 1. Mr. Faroniya Never Intended to Litigate Because the Claims were Inherently Frivolous.

It is well established that an IP address alone identifies only a subscriber, not an infringer. *BKGTH Prods. LLC v. Doe*, No. 13-cv-5310, 2013 U.S. Dist. LEXIS 140924, *22 (E.D. La. Sept. 30, 2013) ("This exact issue has been used to support denials of expedited discovery requests in similar copyright infringement cases across the country.").

> [T]hese already legitimate concerns are exacerbated by the growingly unrealistic expectation that the registered subscriber of an IP address is the same person alleged to have engaged in the allegedly infringing conduct.

*In re Malibu Media Adult Film Copyright Infringement Cases*, 2015 U.S. Dist. LEXIS 74125, *9-11 (E.D.N.Y. June 8, 2015). *See also Malibu Media, LLC v. Doe*, No. 13-cv-536; No. 13-cv-544; No. 13-cv-779, 2013 U.S. Dist. LEXIS 176701, *7-12 (E.D. Wis. Dec. 12, 2013) ("An IP address identifies, at most, an internet subscription that can be used by multiple people."); *Malibu Media LLC v. John Does 1-10,* No. 12-cv-01642, *slip op.* at 4 (C.D. Cal. Oct. 10, 2012) ("An IP address alone may yield subscriber information, but that may only lead to the person paying for the Internet service and not necessarily the actual infringer."); *Malibu Media, LLC v. Reynolds*, No. 12-cv-6672, 2013 U.S. Dist. LEXIS 31228, *48 (N.D. Ill. Mar. 7, 2013) ("Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants."); *Malibu Media v. Doe*, No. 14-cv-20213, ECF No. 10 (S.D. Fla. March 20, 2014) ("Even if this IP address is located within a residence, the geolocation software cannot identify who has access to that residence's computer and who would actually be using it to infringe Plaintiff's copyright. The Court finds that Plaintiff has not established good cause[.]")

> The Court questions whether these allegations are sufficient to allege copyright infringement stemming from the use of peer-to-peer file sharing systems where the Defendant-corporation is connected to the infringement solely based on its IP address. It may be possible that Defendant is the alleged infringer that subscribed to this IP address, but plausibility is still the touchstone of *Iqbal* and *Twombly*.

*Malibu Media, LLC v. Tsanko*, No. 12-cv-3899, 2013 U.S. Dist. LEXIS 169186, *10 (D.N.J. Nov. 30, 2013).

Defendant, therefore, was sued not on the basis of his allegedly infringing activity, but due to his status as subscriber of the IP address utilized. To identify John Doe as the Defendant without any basis greater than his name on his cable bill is the very definition of recklessness and vexatiousness.[12]

Even if Plaintiff could definitively trace the BitTorrent activity in question to the Defendant, Malibu fails to present any evidence indicating that John Doe either uploaded, downloaded, or even possessed a complete copyrighted video file. (*See* Compl., Doc. 1, ¶19 ("IPP International UG downloaded from Defendant *one or more bits* of each file hash listed on Exhibit A.") (emphasis added); Fieser Decl., Doc. 2-4, ¶15 ("Our software downloaded one or more bits of each file hash listed on Exhibit A from the IP address referenced on Exhibit A."). At least one other district court has noted that:

> [i]ndividual BitTorrent file pieces are worthless … If it is the case that a Doe Defendant logged onto the BitTorrent swarm, downloaded and then uploaded a single piece to the IPP server, and then logged off, all he has done is transmit an unusable fragment of the copyrighted work. … [T]he Court notes that Malibu's case is weak if all it can prove is that the Doe Defendants transmitted only part of all the BitTorrent pieces of the copyrighted work.

*Malibu Media, LLC v. John Does 1-10,* No. 12-cv-3623, 2012 U.S. Dist. LEXIS 89286, *6 (C.D. Cal. June 27, 2012). *See also Reliance Ins. Co. v. Sweeney Corp., Maryland*, 792 F.2d 1137, 1139 (D.C. Cir. 1986) ("With so many worthy claims waiting to be resolved, we cannot tolerate unfounded and undeveloped claims. Sanctions for this behavior are clearly appropriate.").

This is not an instance wherein counsel failed to investigate his "client's" claims before filing suit. Malibu Media has been the subject of numerous reported decisions and news articles. Rather, Mr. Faroniya knew with absolute certainty that the case against the Defendant was premised on

---

[12] On the same grounds, at least one court has found that an attorney "violated Rule 11(b)(3) for filing a pleading that lacks factual foundation." Order to Show Cause re Sanctions for Rule 11 and Local Rule 83-3 Violations, *Ingenuity 13 LLC v. John Doe*, No. 12-cv-8333, 2013 U.S. Dist. LEXIS 17693, *3 (C.D. Cal. Feb. 7, 2013). As that court noted, a plaintiff's "precomplaint duty to find supporting facts is 'not satisfied by rumor or hunch.'" *Id.* p. 2 (*quoting Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)).

unsubstantiated allegations. *See e.g.* Doc. 8-1 p. 12 ("Δ: As we both know, the subscriber is not necessarily the infringer. MM: Yes, this is correct."). A pre-filing inquiry into his own history of litigation shows Mr. Faroniya has previously filed no fewer than 400 actions on behalf of Malibu Media with similar claims that have resulted in voluntary dismissal. There can be little doubt Mr. Faroniya knew that the allegations he included in the complaint and the claims asserted against Defendant were insufficient and that he never intended to litigate the matter.[13]

The result being Defendant was forced to engage in wasteful, expensive, and protracted motion practice rather than be shamed into settling a case Mr. Faroniya could neither prove nor intended to.

Under these circumstances, it is reasonable to conclude that the Mr. Faroniya did not have a good faith belief that his suit was well founded. *Hulen v. Polyak*, No. 84-6090; No. 85-5032, 1985 U.S. App. LEXIS 13754, *7 (6th Cir. 1985); *Fharmacy Records v. Simmons*, No. 05-cv-72126, 2006 U.S. Dist. LEXIS 2789, *18 (E.D. Mich., Jan. 20, 2006) (sanctions are warranted where the claims are frivolous on the merits, even where counsel tries to voluntarily dismiss them); *Wilson-Simmons v. Lake County Sheriff's Dep't.*, 207 F.3d 818, 824 (6th Cir. 2000) ("'when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of non-frivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney.") (*citing In re Ruben*, 825 F.2d at 984).

**B. Defendant is entitled to an award of attorney's fees.**

Considering the filings of record, the pertinent Rules of Civil Procedure and case law, the order to show cause, repeat extensions, and the oppositions to Defendant's motions to quash and dismiss—it is well-demonstrated that Mr. Faroniya's conduct as the attorney of record was intentional, frivolous, and in bad faith. Mr. Faroniya's legal maneuverings were entirely groundless and were taken for reasons of harassment and other improper purposes.

> An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to *carte blanche* to burden the federal courts by pursuing claims that are frivolous on the merits, or by pursuing non-frivolous claims through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise "unreasonable and vexatious." Accordingly, at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation

---

[13] *Landis v. Fannie Mae*, 922 F.Supp.2d 646 (E.D. Mich. 2013) (cautioning counsel that the repeated filing of cookie cutter complaints may constitute professional misconduct). *See also Gjokaj v. HSBC Mortg. Servs.*, No. 14-cv-11119, 2014 U.S. Dist. LEXIS 89205, *31-32 (E.D. Mich. July 1, 2014).

tactics will needlessly obstruct the litigation of non-frivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney.

*Jones*, 789 F.2d at 1230.

A court must temper a plaintiff's right of voluntary dismissal with consequences when it used not in good faith, but rather as a tactical tool to frustrate due process and in such a way that prejudices a defendant's rights. *See e.g. Collins v. Warden, London Corr. Inst.*, No. 12-cv-1093, 2014 U.S. Dist. Lexis 72643 (S.D. Ohio May 28, 2014). The fact that Mr. Faroniya can unilaterally terminate the action under Rule 41(a)(1) does not mean that he cannot be held accountable for what occurs in that action. *River City Capital,* 491 F.3d at 310; *Cooter & Gell,* 496 U.S. at 397-98. As the Supreme Court has recognized, the purpose of the Rule 41 provisions regarding voluntary dismissal without prejudice is to "curb abuses of the judicial system," and the policies behind Rule 41 are "completely compatible" with the policies of other Federal Rules whose violation may bring sanctions, like § 1927. *Id.* at 397.

Mr. Faroniya typically avoids taking even the most perfunctory steps to perpetuate cases past the pre-hearing discovery phase. Once a case attracts a court's scrutiny, he bows out from litigating claims by voluntarily dismissing under Rule 41(a). That Rule has been Mr. Faroniya's saving grace, protecting him from the many insurmountable evidentiary and ethical flaws in his copyright cases, letting him skirt sanctions and duck any substantive investigation of the merits of his claims.

Malibu Media is a sophisticated litigant, so it should not be allowed to avoid sanctions simply by adapting its tactics after being questioned by multiple federal judges.

*Doe,* 2013 U.S. Dist. LEXIS 176701, *14.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Motion for Attorney's Fees Pursuant to 28 U.S.C. § 1927 and the Court's inherent authority be granted.

Dated: July 20, 2015

Respectfully submitted,

*/s/ Jason E. Sweet*
_____
Jason E. Sweet (BBO# 668596)
BOOTH SWEET LLP

32R Essex Street
Cambridge, MA 02139
Tel.: 617-250-8619
Fax: 617-250-8883
Email: jsweet@boothsweet.com
*Pro Hac Vice Appearance*

## CERTIFICATE OF SERVICE

I hereby certify that on this July 20, 2015 I filed the foregoing document through the Court's CM/ECF system, which will serve the documents on all counsel of record who have consented to electronic service.

*/s/ Jason E. Sweet*