UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | : | Case No. 1:14-cv-493 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| JOHN DOE, | : | |
| | : | |
| Defendant. | : | |

**ORDER DENYING DEFENDANT'S MOTION FOR SANCTIONS
PURSUANT TO 28 U.S.C. § 1927 AND/OR
THE COURT'S INHERENT AUTHORITY (Doc. 38)**

This civil action is before the Court on Defendant's motion for sanctions pursuant to 28 U.S.C. § 1927 and/or the Court's inherent authority (Doc. 38) and the parties' responsive memoranda (Docs. 39, 40).

### I.  BACKGROUND

Plaintiff filed this action against a John Doe Defendant identified by an Internet Protocol address ("IP address").  Malibu Media alleged that the internet subscriber assigned IP address 65.189.10.120 used the BitTorrent file distribution network to infringe thirty of Malibu Media's copyrighted works.  Specifically, Malibu Media owns copyrights for pornographic movies.

Simultaneously with filing its complaint, Malibu Media filed a motion for leave to serve a third-party subpoena prior to a Rule 26(f) conference, in order to obtain the identity of the subscriber assigned the IP address. (Doc. 2).  The Court granted Malibu Media's motion for leave on June 16, 2014. (Doc. 4).

Malibu Media served the Internet Service Provider with a third-party subpoena on June 19, 2014. (Doc. 22 at 1). On August 22, 2014, Defendant filed a motion to quash. (Doc. 8). After briefing on Defendant's motion to quash was completed, Malibu Media filed its first motion for an extension of time to complete service on October 13, 2014. (Doc. 15).

On January 21, 2015, the Court denied Defendant's motion to quash and granted Malibu Media's motion for an extension of time to complete service. (Doc. 20). The Court ordered Malibu Media to complete service of process by February 28, 2015. (*Id.* at 15). Additionally, the Court noted Malibu Media's indication that it would not object to Defendant proceeding anonymously. (*Id.* at 15). Accordingly, the Court directed Malibu Media to file the summons and its return under seal if they disclosed the Defendant's name and identifying information. (*Id.*). The Court also struck three paragraphs of Malibu Media's Complaint that alleged that Defendant infringed the copyrights of third persons, finding that although such information may potentially be relevant to the identification of the true infringer at a later stage in the litigation, it is immaterial to Plaintiff's claim that Defendant infringed its copyrighted works. (*Id.*).

Malibu Media learned Defendant's identity on February 2, 2015. (Doc. 28 at 2). Malibu Media then proceeded to "carry out a due diligent [sic] investigation" to ensure that it had a good faith basis to proceed against Defendant. (*Id.*).

On February 25, 2015, Malibu Media filed a motion for leave to file its proposed summons and summons return under seal, but did not request an extension of time to complete service of process. (Doc. 21). On February 26, 2015, the Court granted Malibu

2

Media leave to file under seal.  The Court expressly ordered Malibu Media only to include Defendant's name and identifying information in the summons and a Reference List, with both documents to be filed under seal.  All other documents, including the amended complaint, were to refer to Defendant only as John Doe. The Court also reaffirmed that February 28, 2015 remained as the deadline for Malibu Media to complete service of process.  On March 2, 2015, Malibu Media requested a second extension of time to complete service.  (Doc. 22).   Defendant filed a motion to dismiss the action and opposed the requested extension.  (Doc. 23).

On March 13, 2015, Malibu Media filed an amended complaint, proposed summons, and Reference List.  (Docs. 24, 25).  The amended complaint was publicly filed and referred to Defendant only as John Doe, in compliance with the February 26, 2015 Notation Order. (Doc. 24).  However, the proposed summons, which was filed as an exhibit to the amended complaint, and the Reference List were also publicly filed and listed Defendant's name and address. (*Id.*, Ex. C; Doc. 25).  The Reference List consisted of a main document and an attachment. (Doc. 25).  The main document was titled Plaintiff's Notice of Filing Reference List To Amended Complaint Under Seal, with the actual Reference List containing Defendant's name and address attached as an exhibit. Shortly after filing the documents, Malibu Media's counsel left a voice message on the Clerk's after-hours line advising of his error. The Clerk sealed the Reference List and the proposed summons was sealed by Chamber's staff.

On March 15, 2015, Defendant filed a motion for an order to show cause why Malibu Media and its counsel should not be held in contempt. (Doc. 26).  On March 16,

3

2015, the Court concluded that Defendant had established a *prima facie* case that Malibu Media and Mr. Faroniya had violated a definite and specific order of the Court and ordered them to show cause in writing why they should not be sanctioned or held in contempt. (Doc. 27).

On May 26, 2015, the Court granted Malibu Media's request for a second extension of time to complete service of process and denied Defendant's motion to dismiss. (Doc. 33). The Court found that because the Internet Service Provider did not respond to the third-party subpoena until the Court denied Defendant's motion to quash, the delay in effecting service prior to February 2, 2015 was not attributable to Malibu Media. (*Id.*). The Court also declined to impose sanctions or hold Malibu Media in contempt at that time. (*Id.*).

On May 28, 2015, Defendant filed a waiver of service of summons. (Doc. 35). On June 12, 2015, Plaintiff voluntarily dismissed the action pursuant to Rule 41(a)(1)(A)(i). (Doc. 36).

## II. STANDARD OF REVIEW

As an initial matter, "sanctions should not be meted out liberally" and "should apply only in especially egregious cases." *Prater v. Livingston Avenue Child Care LLC*, No. 2:14-cv-490, 2015 WL 1439322, at *9 (S.D. Ohio Mar. 27, 2015); *see also Mapother & Mapother, P.S.C. v. Cooper*, 103 F.3d 472, 478 (6th Cir.1996).

Moreover, "[g]enerally, fee shifting is prohibited under the 'American Rule,' which is 'deeply rooted in our history and in congressional policy.'" *BDT Products, Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010) (citing *Alyeska Pipeline Serv. Co.*

4

*v. Wilderness Soc'y*, 421 U.S. 240, 247, 271 (1975). Congress, however, "while fully recognizing and accepting the general rule," has made "specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights." *Id.* In addition to awarding fees under one of these statutory provisions, moreover, a court may assess attorney fees against a party under the court's inherent powers "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)). This exception to the American Rule—the imposition of sanctions under a court's inherent powers—"thus requires a finding of bad faith or of conduct 'tantamount to bad faith.'" *Id.*; *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir.2003).

The imposition of sanctions under a court's inherent powers is an independent basis aside from Rule 11 or Section 1927 for sanctioning bad faith litigation conduct. *Chambers,* 501 U.S. at 44–45, 111 S.Ct. 2123. In order to award attorney fees under the court's inherent powers, the court must find that: (1) the claims advanced were meritless; (2) counsel knew or should have known this; and (3) the motive for filing the suit was for an improper purpose such as harassment. *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.,* 125 F.3d 308, 313 (6th Cir.1997). Neither meritlessness alone nor improper motives alone will suffice. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 524 (6th Cir. 2002) (quoting *Big Yank*, 125 F.3d at 313-14). Furthermore, a court may impose sanctions jointly and severally against a party and his counsel. *Tropf v. Fid. Nat'l Title Ins. Co. .,* 289 F.3d 929, 939 (6th Cir.2002).

Accordingly, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Moreover, in general, "a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *First Bank of Marietta*, 307 F.3d 501 at 516.

Nevertheless, 28 U.S.C. § 1927 authorizes sanctions under certain circumstances even absent any showing of bad faith:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"Unlike sanctions imposed under a court's inherent authority, § 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence." *Red Carpet Studios v. Sater,* 465 F.3d 642, 646 (6th Cir. 2006). The purpose of the sanctioning power authorized under § 1927 is to "deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Id.* The Sixth Circuit will uphold sanctions under § 1927 when an attorney "knows or reasonably should know that a claim pursued is frivolous" or "has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by the member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986). "Thus, an attorney is sanctionable when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." *Red*

6

*Carpet Studios,* 465 F.3d at 646. Conduct deserving of sanctions under § 1927 typically involves some abuse of the legal process. *Kleinmark v. St. Catherine's Care Ctr.*, 585 F. Supp. 2d 961, 965 (N.D. Ohio 2008).

### III.  ANALYSIS

Defendant moves the Court for an order requiring counsel for Plaintiff Malibu Media to satisfy personally the excess attorney's fees Defendant incurred because of counsel's alleged unreasonable and vexatious multiplication of the proceedings in this case. Defendant contends that Plaintiff's counsel employed tactics calculated to embarrass and coerce a settlement from the Defendant without any intention of taking the case to trial. Defendant argues that the inclusion of statements in the Complaint that were later struck by the Court, the requested extensions for service of process, and the public filing of the Reference List support his contention that the conduct of Plaintiff's counsel was intentional, frivolous, and in bad faith.

#### A. Sanctions Pursuant to the Court's Inherent Powers

To award attorney fees under the court's inherent powers, the Court must find that (1) the claims advanced were meritless; (2) counsel knew or should have known this; and (3) the motive for filing the suit was for an improper purpose such as harassment." *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir.1997). The Court finds that these three elements are not satisfied here.

Defendant argues that Plaintiff's counsel knew the claims were inherently frivolous because he filed the action based on Plaintiff's status as subscriber of the IP address utilized rather than on the basis of his allegedly infringing activity, and failed to

7

present any evidence indicating that Defendant uploaded, downloaded, or possessed a complete copyrighted video file. As noted by Plaintiff, however, the Court specifically struck Defendant's references to "additional evidence" in the Complaint, finding that although such information may potentially be relevant to the identification of the true infringer at a later stage in the litigation, it is immaterial to Plaintiff's claim that Defendant infringed its copyrighted works. Moreover, as acknowledged by other another court, "Malibu certainly has the right to protect its copyright, assuming it owns a protectable copyrighted work, by bringing infringement actions against those it believes engaged in infringing conduct." *Malibu Media, LLC v. Does* 1-28, 295 F.R.D. 527, 535 (M.D. Fla. 2012).

Accordingly, the imposition of sanctions pursuant to the Court's inherent powers is not appropriate in this case.

### B. Sanctions Pursuant to 28 U.S.C. § 1927

The issue of whether sanctions are appropriate pursuant to 28 U.S.C. § 1927 presents a closer question. Defendant contends that the conduct of Plaintiff and its counsel in this case, as well as their conduct in countless other cases, confirms that the entire action was nothing more than pretext to coerce a settlement. Because Plaintiff never intended to litigate the action, Defendant contends, Plaintiff and its counsel abused court processes and therefore should be sanctioned pursuant to § 1927.

As for the conduct of Plaintiff in this litigation, the Court does not agree that Plaintiff's inclusion of statements in the Complaint that were later struck by the Court, requested extensions of time for service of process, and/or the filing of the Reference List

support a conclusion that Plaintiff abused court processes. The Court granted Plaintiff's two motions for extensions of time for service of process, and declined to impose sanctions for the filing of the Reference List. In relation to the inclusion of certain statements in the Complaint, although the Court struck the paragraphs from the Complaint, the Court also noted that such information may potentially be relevant to the identification of the true infringer at a later stage in the litigation. Accordingly, the Court cannot find that Plaintiff's actions relating to these specific issues support the imposition of sanctions.

The Plaintiff's voluntary dismissal, in light of the countless voluntary dismissals filed in numerous other suits in this District and others, however, is more concerning. The Court has discussed Plaintiff's extensive litigation history at length in previous opinions. *See, e.g., Malibu Media v. Downs*, No. 14-cv-00707-TSB, Doc. 17, at 17 (S.D. Ohio May 26, 2015); *Malibu Media v. Ramsey*, No. 14-cv-00718-TSB, Doc. 15, at 5 (S.D. Ohio May 26, 2015). As noted in these opinions, Malibu Media has filed well over 60 cases in this District in the past year, and not a single one of these cases has ever progressed to a Rule 26(f) conference. In fact, most cases are voluntarily dismissed by Malibu Media pursuant to Rule 41(a)(1)(A)(i) without obtaining a summons, but presumably after Malibu Media has used the third-party subpoena to obtain a settlement. Throughout these cases, Malibu Media has not shown any indication that it intends to prosecute the merits of its copyright infringement claims.

Moreover, thousands of similar cases have been filed nationwide, leading several courts to discuss the potential for abuse of process in these cases. One court noted, "[a]

great number of similar cases have been filed in the past several months in this and other District Courts, many of which appear to be simply using the federal courts as an avenue to collect money." *Malibu Media, LLC v. John Does 1-64*, 2:12-cv-1262, 2012 WL 4835317, at *2 n.3 (E.D. Cal. Oct. 10, 2012). Courts have commented on "the growing concern about unscrupulous tactics used by certain plaintiffs, particularly in the adult films industry, to shake down the owners of specific IP addresses from which copyrighted adult films were allegedly downloaded." *Malibu Media, LLC v. Does 1-5*, No. 12-cv-2950, 2012 WL 2001968, at *1 (S.D.N.Y. June 1, 2012). Noting their concerns about abuse of civil process, at least in relation to the process of joinder, courts have indicated that they may impose sanctions for such abusive tactics. *See Malibu Media v. John Does 1-28*, No. 12-cv-12598, 2012 WL 7748917, at *9 (noting that John Doe defendants may be able to "collect some of their litigation costs" from plaintiff film company in the event that the copyright infringement action amounted to an abuse of civil process); *Malibu Media LLC v. John Does 1–16, John Does 1–14, John Does 1–22*, Civil Action Nos. 12–2078, 12–2084, 12–2088, 2012 WL 4717893, at *9 (E.D.Pa. Oct.3, 2012) (noting that if plaintiff "continue[s] to 'pick off' individual John Does for confidential settlements, the Court may draw an inference that [p]laintiff is not serious about proving its claims, or is unable to do so.").

Thus, the question remaining for resolution is whether Plaintiff's voluntary dismissal in this particular litigation warrants the imposition of sanctions, in light of the well-founded concern that Malibu Media is engaging in a pattern of filing lawsuits solely to coerce settlements, with no intent to actually prosecute the merits of its copyright

infringement claims. Under the right circumstances, filing a lawsuit solely to force a settlement may qualify as improper conduct subject to sanctions. *See, e.g., Homico Const. and Development Co. v. Ti-Bert Systems, Inc.*, 939 F.2d 392, 395 (6th Cir. 1991) (Joiner, J.)(dissenting) ("The use by the defendant of the procedures and processes of the courts in an attempt to force settlement without an intent to go to trial…justify the award of sanctions against the defendant."); *In re Leeds Bldg. Products, Inc.*, 181 B.R. 1006, 1012 (N.D. Ga. 1995) (Clearly, "seeking a settlement after filing a complaint is not sanctionable conduct in and of itself. The practice does become objectionable and sanctionable, however, when one party files an action that is objectively baseless and lacking in merit with the hope that the other party will settle to cut its litigation costs.").

Here, the Court shares Defendant's concern that Plaintiff Malibu Media is abusing the process by filing actions solely in an attempt to force settlement, with no intent to actually litigate the claims. The Court is also mindful, however, that Malibu Media has a right to pursue its copyright claims and has a right to voluntarily dismiss an action before a defendant's answer. The Court is not prepared to impose sanctions in this particular action, where several factors weigh against a finding that Plaintiff abused the process. Here, several issues *were* litigated prior to the voluntary dismissal, Plaintiff agreed that it would not object to Defendant proceeding anonymously throughout discovery (eliminating concerns that the complaint would be amended to name the Defendant early in the litigation in an attempt to coerce settlement), Plaintiff never initiated settlement discussions, and the voluntary dismissal was filed after waiver of service of process.

## IV.  CONCLUSION

Accordingly, based on the foregoing, Defendant's motion for sanctions (Doc. 38) is **DENIED**, as set forth in this Order.

**IT IS SO ORDERED.**


Date:  3/30/16                                             *s/ Timothy S. Black*
                                                                    Timothy S. Black
                                                                    United States District Judge